705 N.W.2d 576 (2005)
In the Matter of the Application for PERA Police and Fire Plan Line of Duty Disability Benefits of Stephen BRITTAIN.
No. A04-2407.
Court of Appeals of Minnesota.
November 15, 2005.
*577 Denise Yegge, Charles A. Horowitz; Mansfield, Tanick & Cohen, Minneapolis, MN, for relator Stephen Brittain.
Mike Hatch, Attorney General, Jon K. Murphy, Rory H. Foley, Assistant Attorneys General, St. Paul, MN, for respondent Public Employees Retirement Association.
Considered and decided by DIETZEN, Presiding Judge, KLAPHAKE, Judge, and PETERSON, Judge.

OPINION
KLAPHAKE, Judge.
By writ of certiorari, relator appeals from the decision of the Public Employees Retirement Association (PERA) denying him line-of-duty disability benefits payable under Minn.Stat. § 353.656, subd. 1 (2004). PERA interpreted the statute to provide line-of-duty benefits only when the injury, sickness, or disability was incurred during a hazardous situation.
Because the statute provides line-of-duty benefits to a person injured during "any act of duty," without limitation to hazardous situations, we reverse.

FACTS
Relator Stephen Brittain had been a Ramsey County Deputy Sheriff for 16 years when he developed severe depression in August 2002. Prior to 2002, relator had no problems at work, except for mild hearing loss from being a firearms instructor. In 2002, a new supervisor became acting head of relator's unit. Relator and the new supervisor clashed; relator felt that she was "out to get [him]" and co-workers told him that she referred to him as one of the "male slugs" who was "brain dead." Relator and some of the male deputies felt that the supervisor favored female deputies and her own brother, *578 assigning them easier jobs with more overtime. The bad feelings between relator and the new supervisor culminated in a shouting match on August 9, 2002. On August 27, 2002, relator went on medical leave.
Relator consulted with his family physician, Dr. Kenneth Hodges, and a psychologist, Brockman Schumacher. Schumacher supported relator's medical leave, based on findings of "insomnia, somatic difficulties, diminished enjoyment of usual activities, intrusive ruminative thinking, depressed mood, exhaustion, difficulty concentrating, emotional lability, and agitation." Relator began receiving disability benefits.
Ultimately, both Hodges and Schumacher opined that relator was unable to perform the duties of a deputy sheriff, based on major mental disorder, primarily depression, which arose out of the course of his duties. PERA consulted with physicians from the Minnesota Department of Health, who agreed that relator was medically disabled due to depression. In December 2003, PERA awarded relator a non-duty disability pension, but denied him a line-of-duty disability pension, a difference of about $500 per month.
Relator asked for a fact-finding conference before an administrative law judge (ALJ). After a hearing, the ALJ issued findings of fact, conclusions, and a recommendation that relator be granted a line-of-duty disability pension, stating:
[Relator] has demonstrated by a preponderance of the evidence, that his disability is the direct result of a depression that was incurred in or arose out of his service as a Ramsey County Sheriff's Deputy. While his loss of hearing added to his stress on the job, it was not the primary cause for the depression. Instead, the primary cause for the depression was the hostility which he perceived in his working environment. His depression arose out of an act of duty, and thus he is entitled to line of duty benefits.
Despite the ALJ's recommendation, the PERA staff recommended that its board deny relator line-of-duty benefits. On October 14, 2004, the board denied relator's application because (1) relator was already receiving disability benefits, albeit not line-of-duty benefits; and (2) relator's depression was the result of his perception of a hostile work environment, and not the result of the inherent dangers of a sheriff deputy's job. Relator filed a petition for a writ of certiorari, which was granted.

ISSUE
Did the PERA Board err by concluding that depression resulting from a hostile work environment is not a disability incurred in or arising out of any act of duty within the meaning of Minn.Stat. § 353.656, subd. 1 (2004)?

ANALYSIS
The appellate court reviews the actions of a public retirement fund board under the same standard of review as the actions of an administrative agency. Axelson v. Minneapolis Teachers' Ret. Fund Ass'n., 544 N.W.2d 297, 299 (Minn.1996). The quasi-judicial decision of such a body will not be reversed unless it is fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within its jurisdiction, or based on an error of law. Id. The reviewing court is not bound by the agency's decision and need not defer to agency expertise, although a certain amount of deference is paid to the agency's interpretation of its own regulations, if they are unclear or ambiguous. St. Otto's Home v. Dept. of Human Servs., 437 N.W.2d 35, 39-40 (Minn.1989). Statutory construction, however, is a question of law reviewed de novo. Brookfield Trade Ctr. *579 v. County of Ramsey, 584 N.W.2d 390, 393 (Minn.1998).
Minn.Stat. § 353.656, subd. 1 (2004) provides line-of-duty benefits if a police officer becomes physically or mentally unable to perform the duties of a police officer for a period of at least one year "as the direct result of an injury, sickness, or other disability incurred in or arising out of any act of duty." Both physical and mental disabilities are included in the statute. Id. "Nonduty disability benefit[s]" are paid if a police officer becomes unable to perform his duties "because of sickness or injury occurring while not on duty as a police officer." Id., subd. 3.
The basis for PERA's denial of line-of-duty benefits is its interpretation of Minn.Stat. § 353.656, subd. 1, in conjunction with Minn.Stat. § 353.63 (2004), which states:
It is the recognized policy of the state that special consideration should be given to employees of governmental subdivisions who devote their time and skills to protecting the property and personal safety of others. Since this work is hazardous, special provisions are hereby made for ... disability benefits... based on the particular dangers inherent in these occupations. The benefits provided for in sections 353.63 to 353.68 are more costly than similar benefits for other public employees since they are computed on the basis of a shorter working lifetime taking into account experience which has been universally recognized. This extra cost should be borne by the employee and employer alike at the ratio of 40 percent employee contributions and 60 percent employer contributions.
PERA concluded that this language limits line-of-duty benefits to disabilities incurred during hazardous situations and further concluded that "[d]isabilities resulting from factors such as supervisory harassment or hostile work environment do not constitute a disability arising out of an Act of Duty."
Both relator and PERA agree that relator is occupationally disabled and that his disability occurred as the result of a hostile work environment. There is no indication in the record that relator had a history of depression or mental illness before his employment or that there was any triggering event not related to his employment. It is interpretation of the statute, rather than the issue of causation, that is before us.
Laws are construed to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2004). Thus the letter of the law, if clear and unambiguous, may not be disregarded "under the pretext of pursuing the spirit." Id. Words and phrases are interpreted according to their common meaning, except for words or phrases that have acquired a technical or special meaning. Minn.Stat. § 645.08 (2004).
Minn.Stat. § 353.656, subd. 1, states that line-of-duty benefits are payable for a disability that is "a direct result of an injury, sickness, or other disability incurred in or arising out of any act of duty" that renders the employee unable to perform his or her duties. (Emphasis added.) The statute does not include any limitation on the type of duty or offer a definition for "act of duty."[1] Although Minn.Stat. § 353.63, which describes the purpose or *580 policy of the special benefits for police officers and firefighters, refers to the hazardous nature of the work, it does not specifically delineate that certain benefits are available only if earned during a dangerous situation; rather, it refers generally to the "particular dangers inherent in these occupations." This statute also notes that because these employees have a "shorter working lifetime," the benefits are more expensive, and therefore the "extra cost should be borne by the employee and employer alike." Id. On its face, Minn.Stat. § 353.63 is, as PERA suggests, a statement of policy; it justifies the payment of more liberal benefits to those engaged in certain hazardous occupations and provides for financing the increased costs. It does not, however, limit these benefits to injuries incurred while performing hazardous duty.
Our interpretation of this statute is borne out by the legislative history. Minn.Stat. § 353.63 was enacted by 1959 Minn. Laws ch. 650, § 31, and is unchanged since that time. It was enacted together with the provisions that established different and more generous retirement benefits for police officers and firefighters, set up a fund separate from the PERA fund available to other public employees, and funded the benefits. In 1971, the legislature added Minn.Stat. § 353.656 to address the question of disability benefits. See 1971 Minn. Laws ch. 297, § 3. Although certain changes in language have occurred over the years, the basic language of the statute has remained the same: line-of-duty benefits are payable for injuries "incurred in or arising out of any act of duty"; non-duty benefits are payable for injuries incurred "while not on duty as a police officer." Again, this clear distinction between benefits for disabilities incurred while on duty and those incurred while off-duty supports our conclusion that this statute is not ambiguous.
This court recently issued an opinion that analyzed the phrase "any act of duty." In re Application of Hildebrandt, 701 N.W.2d 293, (Minn.App.2005).[2] Relator Hildebrandt was employed as a 911 operator who was ultimately deemed disabled after she experienced a severe anxiety reaction and depression from responding to a 911 call. The PERA Board denied Hildebrandt duty-related benefits, concluding that "act of duty" disabilities must arise from an inherent danger associated with her job, and that Hildebrandt was experiencing stress because of her "reaction to the expectations of her supervisors" and "this reaction was not a condition that would arise normally out of her prescribed duties." In reversing the board's denial of duty-related benefits, this court stated: "Applying the common meaning of `any' to `act of duty,' it is clear that the legislature intended a local correctional employee to receive `duty-related' disability benefits for injuries that were directly caused by all tasks or functions required of that employee, without limitation." Id. at 299-300.
The dissent's analysis of the phrase "act of duty" supports our analysis. The dissent defines an "act" as "[s]omething done or performed; a deed," and "duty" is defined as "[a] service, function, or task assigned to one," concluding that an "`act' of duty requires two things: (1) the performance of a task or deed; and (2) the task or deed must involve an activity that the employee had some obligation to perform or *581 otherwise be integral to the responsibilities that he or she was assigned to perform." Nothing in this analysis contradicts our conclusion that appearing for work and performing one's job are acts of duty for an employee, perhaps the most basic acts of duty required of an employee. The dissent asserts that "[i]t is hard to conceive of anything not covered under [our] reasoning," and that coverage could be provided absent any requirement of causation. But causation is not the issue here; both parties agreed that relator's problems were caused by his work environment. Further, disabilities that are the result of sickness or injuries incurred outside the workplace or which are rooted in a personal history of mental illness or psychosis are not covered.
Although the dissent focuses on the phrase "act of duty," it ignores one part of the statutory phrase: "any" act of duty. As this court stated in Hildebrandt, "any act of duty" applies to "all tasks or functions required of that employee, without limitation." 701 N.W.2d at 299-300. If the legislature intended to cover only hazardous acts, it could have clarified this with limiting language.
The parties here agree that relator's injury arose out of the hostile work environment. The language of the statute is unambiguous on its face: line-of-duty benefits are payable for injuries incurred in or arising out of any act of duty, including a disability incurred as the result of a hostile work environment. We therefore conclude that the PERA Board erred in its interpretation of the law.

DECISION
Under the unambiguous language of Minn.Stat. § 353.656, subd. 1, relator is entitled to line-of-duty disability benefits because his disability was incurred in or arose out of his duties as a sheriff's deputy.
Reversed.
DIETZEN, Judge (dissenting).
I respectfully dissent. This is a case of statutory interpretation, which we review de novo. Brookfield Trade Ctr., Inc. v. County of Ramsey, 584 N.W.2d 390, 393 (Minn.1998). Yet "[w]hen the meaning of a statute is doubtful, courts should give great weight to a construction placed upon it by the Department charged with its administration." Mammenga v. State Dept. of Human Servs., 442 N.W.2d 786, 792 (Minn.1989) (quotation omitted).
Relator claims that he is entitled to line-of-duty disability benefits because he was exposed to a hostile work environment over a period of months, and that his supervisor's unfair and vindictive behavior caused his depression. The Public Employees Retirement Association of Minnesota (PERA) board reviewed the entire record and denied relator's application for line-of-duty benefits. In so doing, the PERA board adopted and incorporated by reference the PERA Staff's August 30, 2004 Fact Sheet and exceptions to the ALJ report. The PERA Staff found that: (1) relator's problems were a result of "personnel changes, office reorganization and his interaction with his supervisor, ... not because of his duties as a deputy sheriff, as outlined in the job description for that position"; and (2) relator's "reaction to routine personnel policies implemented by [the sheriff's office] were the basis for his depression, not the duties of the position itself." The staff did not find that relator's problems were incurred as a result of following the directives of his supervisor.
Two reasons support my dissent. First, the statute in question limits coverage to an "act of duty." The PERA statute in pertinent part reads:

*582 A member of the police ... who becomes disabled and physically unfit to perform duties as a police officer ... as a direct result of an injury, sickness, or other disability incurred in or arising out of any act of duty, which has or is expected to render the member physically or mentally unable to perform the duties as a police officer ... for a period of at least one year, shall receive disability benefits during the period of disability.
Minn.Stat. § 353.656, subd. 1 (2004) (emphasis added). The purpose of all statutory interpretation is to discern the intention of the legislature. Id. § 645.16. Minnesota law does not define "act of duty." Therefore, the words and phrases must be construed according to their common meaning unless they have otherwise acquired a technical or special meaning. Id. § 645.08(1).
"Act," among other possibilities, is defined as "[s]omething done or performed; a deed." The American Heritage Dictionary 16 (4th ed. 2000). Thus, an act is a task or deed that is affirmatively done or performed. "Duty" in this context is "[a] service, function, or task assigned to one, especially in the armed forces: hazardous duty." Id. at 557 (emphasis in original). Hence, the phrase an "act of duty" requires two things: (1) the performance of a task or deed; and (2) that the task or deed must involve an activity that the employee had some obligation to perform or must otherwise be integral to the responsibilities that he or she was assigned to perform. This interpretation is supported by the statutory canons of construction for two reasons. First, it interprets "act of duty" according to its plain and ordinary meaning. Minn.Stat. § 645.08(1). Second, the interpretation gives meaning to all of the words in the phrase "act of duty." See id.
Under the majority's interpretation, the statute would extend line-of-duty disability benefits to everything that occurred at the workplace. It is hard to conceive of anything that is not covered under the majority's reasoning. Such an interpretation would provide broader coverage than the Worker's Compensation Act, and without any requirement of causation. And it may extend to activities normally considered outside the course and scope of employment. But the statutory language "act of duty" clearly indicates a legislative intent to provide limited coverage. Consequently, the term "act of duty" must be read as a limitation on the ability to recover line-of-duty benefits to only those claims where the applicant was performing a task or deed that the applicant had some duty to perform.[3]
This case is distinguishable from In re Hildebrandt, 701 N.W.2d 293, 298 (Minn.App.2005). In Hildebrandt, the relator was a 911 operator who experienced severe anxiety and depression from fielding an emergency call. See id. at 295-96. Under those facts, this court held the relator was entitled to similar duty-related disability benefits. Id. at 301. Clearly, fielding the 911 call was an act of duty integral to the relator's performance as an operator. Here, the mere exposure to a perceived hostile work environment is not an "act of duty": there is no act, such as *583 fielding a 911 call, or duty, such as aiding a citizen in an emergency situation.
Second, relator fails to meet his burden of demonstrating that his depression arose from any "act of duty." In re Application of Allers, 533 N.W.2d 646, 652 (Minn.App.1995), review denied (Minn. Aug. 30, 1995). The PERA board found that relator did not do anything; he was simply exposed to a situation he perceived as hostile. The board found that relator's reaction to routine personnel policies caused his depression. Based on these findings, the board determined that relator must show more than his subjective feelings in order to qualify for these benefits. The board's determination is entitled to deference. Mammenga, 442 N.W.2d at 792. Relator does not present evidence to demonstrate he performed any "act of duty" which gave rise to his depression. Without such proof, the board properly refused to base benefits solely upon relator's perception.
NOTES
[1] The Minnesota statute differs from those of foreign jurisdictions cited by PERA, which include a definition of "act of duty" that requires "special risk" or "heroism." See, e.g., Trettenero v. Police Pension Fund, 268 Ill.App.3d 58, 205 Ill.Dec. 731, 643 N.E.2d 1338 (1994).
[2] Although Hildebrandt's disability benefits were governed by Minn.Stat. § 353E.06, subd. 1 (2004), the language is similar to Minn.Stat. § 353.656, subd. 1: duty-related benefits are payable for physical or mental disabilities incurred as a direct result of injury, sickness, or other disability, "that was incurred in or arose out of any act of duty." (Emphasis added.)
[3] Even if there is some question as to the meaning of "act of duty," the benefit of the doubt should be resolved in favor of the PERA Board's interpretation of the statute. See Mammenga, 442 N.W.2d at 792. The PERA Board determined that a disability allegedly resulting from a hostile work environment is not a disability incurred in or arising out of any "act of duty." This determination predicated on the board's reading of the statute and is entitled to deference.