In the Matter of the Application for **PERA POLICE AND FIRE PLAN LINE OF DUTY DISABILITY BENEFITS OF Stephen BRITTAIN.**

No. A04–2407.

Supreme Court of Minnesota.

Dec. 7, 2006.

---

Mike Hatch, Attorney General, Rory H. Foley, Assistant Attorney General, Jon K. Murphy, Assistant Attorney General, Saint Paul, MN, for Petitioner.

Denise Yegge Tataryn, Charles A. Horowitz, Jean B. Roth, Mansfield, Tanick & Cohen, P.A., Minneapolis, MN, for Respondent.

Susan L. Naughton, League of MN Cities, Saint Paul, MN, Cort C. Holten, Jeffrey D. Bores, Chestnut & Cambronne, P.A., Minneapolis, MN, for Amicus Curiae.

## OPINION

HANSON, Justice.

Respondent Stephen Brittain, a former Ramsey County Deputy Sheriff, filed for disability benefits under the statutory Public Employees Police and Fire Fund (Police and Fire Fund). Brittain alleged that he was disabled as a result of anxiety and depression caused by a hostile work environment created by his supervisor. Appellant Public Employees Retirement Association Board of Trustees (PERA Board),[1] which manages the Police and Fire Fund, approved Brittain for occupational disability benefits that are available for a disability occurring while "not on duty," but denied Brittain's claim for the enhanced benefits that are available for a disability arising out of "any act of duty." The PERA Board interpreted "any act of duty" as being limited to acts involving hazardous duty. A divided court of appeals reversed, holding that "any act of duty" included all acts while on duty and that enhanced benefits were payable for "a disability incurred as the result of a hostile work environment." *In re PERA Police & Fire Plan Line of Duty Disability Benefits of Stephen Brittain*, 705 N.W.2d 576, 581 (Minn.App.2005). We affirm.

The PERA Board is a membership board that manages several public employee pension plans that are created by statute, including the Police and Fire Fund. The Police and Fire Fund provides two types of disability benefits for police officers who are no longer able to perform their duties. *See* Minn.Stat. § 353.656 (2004). Basic benefits are provided in subdivision 3 for an officer who has become disabled "because of sickness or injury occurring while *not on duty*." *Id.*, subd. 3 (emphasis added). Enhanced benefits are provided in subdivision 1 for an officer who has become disabled "as a direct result of an injury, sickness, or other disability incurred in or arising out of *any act of duty*." *Id.*, subd. 1 (emphasis added).[2]

Brittain served as a deputy sheriff for the Ramsey County Sheriff's Department from 1986 to 2003 and was a member of the Police and Fire Fund. Brittain suffered two injuries during his employment. First, Brittain had permanent hearing loss in his left ear as a result of working as a firearms instructor. Brittain received workers' compensation benefits for his hearing loss. He does not claim that this

---

1. The PERA Board was established in 1931 and is given fiduciary responsibilities by Minn.Stat. ch. 356A (2004). *See* Act of Apr. 24, 1931, ch. 307, § 3, 1931 Minn. Laws 389, 391 (codified at Minn.Stat. § 353.03 (2004)).

2. The parties and the PERA Board frequently refer to these two types of disability benefits as "line of duty" and "nonduty" benefits, using the headnotes for subdivisions 1 and 3, respectively, of section 353.656. But we will avoid these references because the headnotes are not a part of the statute and do not determine its meaning. Minn.Stat. § 645.49 (2004); *Associated Builders & Contractors v. Ventura*, 610 N.W.2d 293, 303 n. 23 (Minn. 2000).

hearing loss was the primary cause of his disability, but does suggest that the stress caused by his hearing loss was a contributing factor to his depression. Second, Brittain suffered from depression. He claims that his depression was caused primarily by a hostile work environment, alleging that his supervisor harassed him and made working conditions intolerable.

The PERA Board referred Brittain's application for disability benefits to the Minnesota Department of Health, whose medical consultant reviewed Brittain's medical records and the medical report of Brittain's family physician.[3] The medical consultant opined that Brittain was "occupationally disabled." Based on that opinion, the PERA staff approved Brittain's application for basic disability benefits, but concluded that Brittain had failed to provide enough evidence to substantiate an enhanced award of "act of duty" benefits.[4] In a notice to Brittain of the opportunity to attend a fact-finding conference, the PERA staff elaborated on its reasoning, stating that the Police and Fire Fund were "created by the legislature with the intent to provide enhanced disability and retirement benefits for police officers and firefighters because of the hazardous nature of those professions." The PERA staff determined that hazardous duties do not include conflicts between coworkers. Brittain appealed the PERA staff decision and requested a fact-finding conference.[5]

At the fact-finding conference before an administrative law judge, Brittain provided a fact statement describing some incidents of harassment by his supervisor. He also provided supporting exhibits consisting of reports from his otolaryngologist and statements by former coworkers in the Ramsey County Sheriff's Department. Brittain's statement and supporting exhibits are contained in the record of the PERA Board. The record does not reflect any objection by the PERA staff to Brittain's statement or supporting exhibits, any cross-examination of Brittain or any evidence offered by the PERA staff to rebut or contradict Brittain's description of the conduct of his supervisor. The reports of Brittain's family physician and his treating psychologist were also included in the exhibits provided by the PERA staff to the administrative law judge.

The administrative law judge concluded that Brittain had met his burden of proving that "his inability to perform the duties of a Deputy Sheriff is the direct result of an injury or sickness that was incurred in or arose out of any act of duty," and recommended that the PERA Board grant the enhanced act of duty disability benefits to Brittain. The PERA Board rejected the judge's recommendation and concluded that Brittan's inability to continue his position did not result from an act of duty. It construed "any act of duty" as including only those acts that involved "hazardous situations."

The court of appeals reversed the PERA Board's ruling, holding that the words "any act of duty" were not ambiguous and

3. The Department of Health serves as the PERA Board's medical advisor pursuant to Minn.Stat. § 353.33, subds. 6a and 6b (2004).

4. The PERA staff estimated that Brittain would receive $2,610 per month for act of duty benefits and $2,197 for not on duty benefits.

5. Pursuant to the authority granted in Minn. Stat. § 353.03, subd. 3(c) (2004), the PERA Board has established a fact-finding process to review staff denials of applications for disability benefits. Appeals are referred to an administrative law judge who conducts a conference, permits the applicant to present evidence and issues findings of fact, conclusions of law, and a recommendation to the PERA Board.

that act of duty benefits "are payable for injuries incurred in or arising out of any act of duty, including a disability incurred as the result of a hostile work environment." *Brittain*, 705 N.W.2d at 581. The dissent argued that an "act of duty" must be read "as a limitation on the ability to recover [act of duty] benefits to only those claims where the appellant was performing a task or deed that the applicant had some duty to perform," and that Brittain's depression did not result from him doing anything, but only from being exposed to something. *Id.* at 582–83 (Dietzen, J., dissenting). The dissent also concluded that deference should be given to the PERA Board's interpretation of the statute. *Id.* at 581.

We granted the PERA Board's petition for further review, which framed the issue as follows:

Is depression resulting from the perceived acts of a hostile supervisor a disability incurred in, or arising out of, "any act of duty" within the meaning of Minn.Stat. § 353.656, subd. 1 (2004)?

In the process of briefing the issue, the PERA Board refined that issue to have two separate but related parts:

1. Whether Brittain provided sufficient evidence that his disability was caused by an act of duty; and

2. Whether working under a hostile supervisor constituted an "act of duty."

(Emphasis and citations omitted.)

We agree that this refinement aids the analysis, but we will address these issues in reverse order because determining the meaning of the words "any act of duty" is the necessary predicate to any application of those words to the facts in this record. And we reformulate the issues as follows:

1. What is the meaning of the words "any act of duty" and, more specifically, is that meaning limited to the tasks and functions of a police officer that involve hazardous situations or heightened risks, or are unique to law enforcement?

2. Was Brittain's psychological disability a "disability incurred in or arising out of" the performance of a task or function that qualifies as an "act of duty," as earlier defined?

## I.

The standard of review for construction of a statute is de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). The analytical framework to follow is to first determine whether the statute is ambiguous:

When interpreting a statute, a court must ascertain and effectuate the intention of the legislature. When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit of a law. To ascertain and effectuate the legislature's intent, courts must first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when it is subject to more than one reasonable interpretation. A court must give a plain reading to any statute it construes, and when the language of the statute is clear, the court must not engage in any further construction.

*State v. McCoy*, 682 N.W.2d 153, 158–59 (Minn.2004) (quotation marks and citations omitted).

If the statute is not ambiguous, the inquiry ends there. *Hyatt v. Anoka Police Dep't*, 691 N.W.2d 824, 827 (Minn.2005). But, if the statute is ambiguous, the intention of the legislature may be ascertained by considering, among other matters:

(1) the occasion and necessity for the law;

(2) the circumstances under which it was enacted;

(3) the mischief to be remedied;

(4) the object to be attained;

(5) the former law, if any, including other laws upon the same or similar subjects;

(6) the consequences of a particular interpretation;

(7) the contemporaneous legislative history; and

(8) legislative and administrative interpretation of the statute.

Minn.Stat. § 645.16 (2004). The question of deference to the PERA Board's interpretation of the statute, similar to the extrinsic matters listed above, arises only if the statute is ambiguous. *Hy–Vee Food Stores, Inc. v. Minn. Dep't of Health,* 705 N.W.2d 181, 185 n. 5 (Minn.2005).

The court of appeals majority determined that the words "any act of duty" in section 353.656, subd. 1, were not ambiguous and meant " 'all tasks or functions required of that employee, without limitation.' " 705 N.W.2d at 581 (quoting *In re Hildebrandt,* 701 N.W.2d 293, 299–300 (Minn.App.2005)). The majority emphasized the expansive nature of the word "any" and the failure of the legislature to include any limiting language. *Id.* The majority held:

> The language of the statute is unambiguous on its face: [act of duty] benefits are payable for injuries incurred in or arising out of any act of duty, including a disability incurred as the result of a hostile work environment.

*Id.*

The PERA Board does not argue that the words "any act of duty" are ambiguous, but it urges that the plain meaning of those words must be determined from placing them in the context of the entire statute. And the PERA Board's contextual reading of those words has evolved from the time of its ruling on Brittain's application.

The PERA Board's order denying enhanced benefits to Brittain determined that [the] act of duty disability benefits are only available for disabilities that result from "hazardous situations" or acts that expose a member to "heightened risks." The difficulty with this interpretation is that the words "any act of duty" are not defined by the statute and the words "hazardous situations" or acts with "heightened risks" do not appear in the subdivision that provides for act of duty benefits. *See* Minn.Stat. § 353.656, subd. 1. In its briefs before us, the PERA Board deemphasized the words "hazardous" or "heightened risks," suggesting that it did not intend to argue that "act of duty disability benefits should be limited to those activities that can be considered hazardous *per se.*" Perhaps taking a cue from the court of appeals dissent, the PERA Board suggests that "any act of duty" should be construed to mean "those duties or activities inherently unique to public safety duties." But, again, the words "inherently unique to public safety duties" do not appear in the subdivision that provides act of duty benefits.

The PERA Board suggests that these additional words are incorporated into the subdivision that provides act of duty benefits by the statement of legislative policy contained in Minn.Stat. § 353.63 (2004), which provides in part:

> It is the recognized policy of the state that special consideration should be given to employees of governmental subdivisions who devote their time and skills to protecting the property and personal safety of others. Since this work is hazardous, special provisions are hereby

made for retirement pensions, disability benefits and survivors benefits based on the particular dangers inherent in these occupations.

We agree that the words "any act of duty" should be read in the context of other parts of chapter 353. *See Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (noting that this court should "read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations"). But we have difficulty concluding that the legislative policy statement in section 353.63 modifies the words "any act of duty" in section 353.656, subd. 1.

Section 353.63 is a general policy statement that explains the dangers of police work and why police officers should be entitled to greater benefits than are provided to other public employees. But the policy statement does not focus on and is not limited to act of duty benefits. Instead, it is applicable to all of the "benefits provided in sections 353.63 to 353.68," which include pension benefits (section 353.64), retirement annuities (section 353.651), disability benefits (section 353.656), and survivor benefits (section 353.657).

As to disability benefits, the policy statement applies as much to "not on duty" benefits as to "act of duty" benefits. It explains why police officers are given "occupational" disability benefits when they are "physically unfit" or they are "unable to perform," regardless of whether the disability was incurred in any act of duty or while not on duty. Occupational disability benefits are not available to other pub-

lic employees, for whom a disability is only recognized if one is "totally and permanently disabled," which is defined as "the inability to engage in any substantial gainful activity." Minn.Stat. §§ 353.33, 353.01, subd. 19 (2004). Because police occupational disability benefits are provided for both act of duty and not on duty disabilities, the policy statement cannot be read to provide specific guidance for interpreting the words "any act of duty."

Further, the policy statement is inclusive, not restrictive. A broad interpretation of act of duty benefits would not conflict with or undermine the policy goals of section 353.63. Those policy goals would only be undermined if benefits were not provided for a disability that was incurred in the course of hazardous duty. The policy goals are not stated in the negative; they do not express an intent to limit or exclude benefits for disabilities that are not incurred in the course of hazardous duties.[6]

Although we agree with the PERA Board that the court should look to other parts of chapter 353 in determining whether the words "any act of duty" are ambiguous, we conclude that the more relevant comparison is to consider the connection between subdivision 1 and subdivision 3 of section 353.656. These two subdivisions comprise the entire universe of disability benefits under the Police and Fire Fund. As such, the outer boundary of "act of duty" benefits under subdivision 1 is determined by its intersection with the boundary of "not on duty" benefits under subdivision 3. Stated another way, unless the legislature intended not to provide benefits for some category of "on duty" disabilities,

---

**6.** Even if a broad definition of "any act of duty" did conflict with the policy statement, our general rules of construction suggest that, where there is conflict between general introductory or explanatory provisions and the plain meaning of the specific words of the operative provision, the specific control the general. *In re Atkinson*, 291 N.W.2d 396, 400 (Minn.1980).

act of duty disabilities must necessarily include all disabilities except those occurring while not on duty. This juxtaposition makes it clear that act of duty is a broad concept that is not reasonably limited to disabilities arising out of "hazardous situations," situations involving "heightened risks," or "activities inherently unique to public safety duties."

The PERA Board argues that the court of appeals failed to give due consideration to the decisions of other state courts that have construed similar police disability statutes. We have considered those decisions and found that they do not inform us on the meaning of the words "any act of duty" in the Minnesota statute. It is true that decisions from Illinois interpret "act of duty" similarly to the interpretation that the PERA Board urges here. Thus, in *Robbins v. Board of Trustees of Carbondale Police Pension Fund*, 177 Ill.2d 533, 227 Ill.Dec. 116, 687 N.E.2d 39, 44 (1997), the Illinois Supreme Court denied act of duty benefits for a police officer's psychological disability, caused by stressful relations with coworkers, because it concluded that an act of duty refers to a specific act that is unique to police service. But, that conclusion was dictated by the Illinois statute that defined "act of duty" as "any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinance or police regulations of the city." *See* 40 Ill. Comp. Stat. 5/5–113 (1993).

The PERA Board also relies on *Allen v. D.C. Police and Firefighters' Retirement & Relief Board*, 528 A.2d 1225 (D.C.1987), and *Woldrich v. Vancouver Police Pension Board*, 84 Wash.App. 387, 928 P.2d 423 (1996). Although these cases bear some factual similarity to Brittain's, they are not helpful in construing "any act of duty"

because their respective statutes used the words "performance of duty" or "in the line of duty." *See* D.C.Code § 4–616 (1981); Wash. Rev.Code Ann. § 41.26.120 (West 1994).

■ When we read the words "any act of duty" in context, and also consider the intersection of those words with the "not on duty" disability provided under subdivision 3 of section 353.656, we conclude that the words "any act of duty" are not ambiguous and their meaning cannot be restricted to hazardous situations, situations of heightened risk, or activities unique to public safety duties. By inserting the modifier "any" before "act of duty," the legislature demonstrated the intent to be inclusive, not restrictive. *See Hyatt*, 691 N.W.2d at 826 ("the word 'any' is given broad application in statutes, regardless of whether we consider the result reasonable"); *see also In re Hildebrandt*, 701 N.W.2d 293, 299–300 (Minn.App.2005) (when used in the affirmative, the word "any" means "every" or "all").

Because we conclude that the statute is not ambiguous, we need not consider the PERA Board's arguments concerning legislative history, public policy, or deference to the PERA Board's interpretation of "any act of duty."

## II.

■ We turn now to the application of the plain meaning of "any act of duty" to the facts in the record before us. As noted, the PERA Board suggests that there is a causation issue that still needs to be addressed. It criticizes the court of appeals for failing "to tie [Brittain's] injury to a task or function required by a deputy sheriff," suggesting that Brittain did not provide sufficient evidence "that his disability was caused by an act of duty." The court of appeals majority rejected this argument on procedural grounds, concluding

that there was no issue of causation before the court because the PERA Board had agreed that Brittain was disabled and that his disability occurred as a result of a hostile work environment. 705 N.W.2d at 579.

We agree with the court of appeals majority that the PERA Board did not preserve for appeal certain causation issues. But we also agree with the PERA Board that our interpretation of the words "any act of duty" does not relieve a police officer from the obligation to tie that disability to a task or function that was performed by the officer. We analyze the causation issues in this way: because the PERA staff did not challenge Brittain's evidence that he was subject to a hostile work environment, that the hostile work environment caused severe depression, or that depression resulted in Brittain's psychological disability, those causation issues were not before the court of appeals and are not before us. The only evidence in the record on those issues was that provided by Brittain. But this leaves a final causation issue, which is whether Brittain's evidence showed that the disability was one *"incurred in or arising out of* any act of duty."

This issue is a subpart of the larger question of whether a disability arising from a hostile work environment can qualify as an act of duty disability. We interpret the court of appeals dissent to be focusing on this subpart when it argues that Brittain must demonstrate that he performed an act of duty that gave rise to his depression. 705 N.W.2d at 583. In the dissent's view, Brittain's depression did not result from him doing any act but only from him being exposed to the acts of someone else.

The court of appeals majority resolved this "causation" issue by concluding that the act of duty that exposed Brittain to a hostile work environment was "appearing for work and performing [his] job." 705 N.W.2d at 581. This represents the broadest possible reading of "any act of duty" because it means that all disabilities that are incurred while on the job are tied to the duty to appear for work and thus qualify for act of duty benefits. We do not find it necessary to reach that reading in this case, and will defer that issue to another day. We conclude, instead, that the unrebutted evidence presented by Brittain sufficiently demonstrated that the hostility he complained of occurred in response to and interfered with Brittain's performance of specific duties.[7]

The best example concerns the confrontations between Brittain and his supervisor regarding the transportation of prisoners, which was one of Brittain's specific duties. Brittain's evidence demonstrated that he had two concerns for officer safety related to transportation of prisoners. First, he was concerned because his hearing loss made it difficult for him to communicate in crowded situations. Second, he was concerned about the number of prisoners that a deputy could safely transport at one time. These two concerns led him to follow the practice of limiting the number of persons taken in the van at one time. He preferred to make two runs with fewer prisoners instead of filling the van to accomplish the transportation in a single run. According to Brittain's evidence, these concerns and Brittain's practice became the focus of harassment by his supervisor,

---

7. The evidence provided by Brittain to the ALJ was in the form of a written statement, presented to the PERA Board, and received in evidence at the fact-finding proceeding. No objection was made by the PERA staff to this form of evidence, either before the ALJ or the PERA Board. Accordingly, we consider it to be record evidence.

who rejected his safety concerns, threatened to have him transferred out of the unit if he continued to raise those safety concerns, refused to answer his questions about safety, and responded to his concerns by giving him fewer and less favorable work assignments.[8] In this example, it is impossible to separate the hostile work environment from Brittain's performance of his duties because the hostility interrupted, impeded, or even prevented that performance.[9]

This analysis of the record evidence resolves the concerns of the court of appeals dissent that, "[u]nder the majority's interpretation, the statute would extend [act of duty] disability benefits to everything that occurred at the workplace. * * * Such an interpretation would provide broader coverage than the Worker's Compensation Act, and without any requirement of causation." *Brittain*, 705 N.W.2d at 582. We do not reach a similarly broad interpretation because the facts do not require us to do so to resolve this appeal.[10]

This analysis also provides the basis to distinguish the cases from other jurisdictions, particularly *Allen* and *Woldrich*, that are relied on by the PERA Board to argue that disabilities resulting from relationships with a supervisor do not constitute an act of duty disability. In *Allen*, the officer's psychological disability was caused by depression resulting from a combination of off duty and on duty automobile accidents. 528 A.2d at 1226–29.

8. Brittain also complained of other incidents of hostility by his supervisor that had less direct effect on his performance of specific duties—speaking poorly of Brittain to coworkers, labeling him as a "male slug" and providing increased scrutiny and negative evaluations. These incidents are more generalized and perhaps involve Brittain in a more passive, reactive role. But we need not decide whether these incidents alone would satisfy the act of duty requirement because the evidence of other incidents provides sufficient causal connection between the hostile environment and Brittain's performance of specific tasks and functions.

9. The dissent disagrees with our analysis of the record in two respects. First, the dissent disagrees with our conclusion that Brittain's evidence of specific harassment directed at the performance of his duties was not rebutted by the PERA staff. But the documents cited by the dissent as constituting rebuttal—a letter, a fact sheet, and staff exceptions—contain only argument, not evidence. Thus, although the PERA staff disagreed with the legal conclusions that could be drawn from Brittain's evidence, they did not offer any evidence to contradict it, such as testimony that Brittain's supervisor did not reject Brittain's safety concerns about transporting prisoners, did not interfere with his practice of limiting the number of prisoners in a single run, and did not respond to his concerns by giving him fewer and less favorable work assignments.

Second, the dissent suggests that the only "testimony" of Brittain was his single answer to a general question put to him by a Board member. But, as noted earlier, the written statement provided by Brittain at the factfinding proceeding constitutes his "testimony" and it contains specific instances of hostility directed to the performance of his duty to transport prisoners. Brittain's conclusory answer to the Board member—that his disability arose out of his duty to report to work—does not contradict or minimize the details provided in his written statement.

10. The concern of the court of appeals dissent that a broad interpretation would somehow conflict with the workers' compensation laws is not well taken. The disability benefits provided to police officers are meant to be considerably broader than workers' compensation benefits because, as we have seen, they are occupational benefits that relate to a police officer's specific occupation and they include disabilities incurred while not on duty. Workers' compensation laws only compensate benefits for disabilities that incapacitate the employee from "working at an occupation which brings the employee an income," and that arise "out of and in the course of employment." Minn.Stat. §§ 176.101, subd. 5(2), 176.021, subd. 1 (2004).

The court affirmed the District of Columbia board's factual determination that the disability was not predominantly caused by his on duty injuries. Id. at 1231. The applicable statute denied on duty disabilities for "service-connected aggravation of an off-duty injury." *See id.* The PERA Board does not claim that Brittain's disability was caused by any off duty incidents or injuries.

In *Woldrich,* the police officer became disabled as a result of depression caused by his reaction to a disciplinary demotion and his supervisor's dissatisfaction with his job performance. 928 P.2d at 424. But the police officer in *Woldrich* did not allege that the demotion or dissatisfaction was unjustified or constituted harassment. His depression, thus, was more easily characterized as resulting from his reaction to something, not from his doing something. And the Washington Court of Appeals distinguished Woldrich's situation from that in an earlier case that may be more relevant here. 928 P.2d at 426. In *Dillon v. Seattle Police Pension Board,* 82 Wash. App. 168, 916 P.2d 956, 960 (1996), the court reversed the denial of line of duty disability benefits where the officer became depressed because he feared that he was not physically able to perform his duties due to a duty-related hand injury. The court held that the officer had presented uncontradicted evidence that his psychological disability was caused by the stress of being required to perform police duties that he perceived himself to be physically unfit to perform. *Id.* at 960.

We conclude that Brittain demonstrated that he had a psychological disability that qualified as a "disability incurred in or arising out of any act of duty."

Affirmed.

ANDERSON, RUSSELL A., C.J., took no part in the consideration or decision of this case.

GILDEA, Justice (dissenting).

I respectfully dissent. I agree with the majority that Minn.Stat. § 353.656, subd. 1 (2004) is unambiguous and that the meaning of the words "any act of duty" in subdivision 1 is not "restricted to hazardous situations." I also agree with the majority's conclusion that the issue in this case is whether Brittain's injury was "incurred in or [arose] out of any act of duty" (in accordance with subdivision 1) or whether the injury occurred "while not on duty as a police officer" (in accordance with subdivision 3). I part company with the majority on the resolution of this fact question, which the majority describes as the "causation issue." Given our standard of review, I would reverse the court of appeals, and remand this matter to the PERA Board for further proceedings.

The parties framed this case to us as one presenting a question of law. The court of appeals resolved the case in that manner, holding that the phrase "incurred in or arising out of any act of duty" meant any injury that happened to an employee while he was at work. *In re PERA Police & Fire Plan Line of Duty Disability Benefits of Stephen Brittain,* 705 N.W.2d 576, 580–81 (Minn.App.2005). The plain meaning of the statute does not leave room for the court of appeals' construction. In my view, it is not enough for Brittain to have been harassed while he was at work to conclude, as the court of appeals did, that he is entitled to the enhanced benefits under subdivision 1. The statute instead requires that the harassment that caused the disability occurred while Brittain was performing "any act of duty," or arose from his performance of "any act of duty." Minn.Stat. § 353.656, subd. 1. I agree with the majority that this is a "causation issue." In my view, the issue presents a

question of fact, and our standard of review dictates that this factual issue be resolved by the agency.

This case was initiated with a petition for writ of certiorari. *See* Minn.Stat. §§ 606.01–.06 (2004). We review questions of law de novo, and I agree with the majority that to the extent that the Board based its decision on an incorrect legal interpretation of the statute, the decision must be reversed.[1] But that does not end our analysis. We have said that we will not substitute our judgment on fact questions for that of the agency unless "the evidence was all one way and the administrative agency found to the contrary." *State ex rel. Spurck v. Civil Serv. Bd.,* 226 Minn. 240, 248–49, 32 N.W.2d 574, 580 (1948). As we recognized in *Spurck,* "[t]he function of the court on certiorari in reviewing the determination of an administrative agency is to decide questions of law raised by the record, but not disputed questions of fact on conflicting evidence." Id.[2] If the agency made an incorrect legal determination, the proper remedy on certiorari review is a remand to the agency for further proceedings consistent with our opinion. Id. at 581; *see also Dokmo v. Indep. Sch. Dist. No. 11,* 459 N.W.2d 671, 675 (Minn.1990) (discussing use of remand

" 'to permit further evidence to be taken or additional findings to be made in accordance with the applicable law' " (citation omitted)). My review of the record leads me to conclude that this is the remedy we should invoke:

The ALJ concluded, and the parties do not dispute, that Brittain has the burden of proof to show that he is eligible for the enhanced disability benefits that he claims.[3] The majority apparently views the evidence in the record on this question as pointing to only one conclusion. The majority states that "[t]he record does not reflect any objection by the PERA staff to Brittain's statement or supporting exhibits, any cross-examination of Brittain or any evidence offered by the PERA staff to rebut or contradict Brittain's description of the conduct of his supervisor." The only specific statement from Brittain that I find in the record, however, came when he appeared before the Board on October 14, 2004. One of the Board members asked Brittain what specific duty he was performing when he sustained his injury. Brittain stated: "the fact that I had to go to work, be supervised by this supervisor, is my act of duty." The record contains no other testimony from Brittain, and the rec-

1. The PERA Board held that Brittain's "inability to continue in his position did not result from an Act of duty as the Board interprets Minn. Stats. § 353.63 and § 353.656, subd. 1 (2004)." The majority concludes that the Board interpreted "any act of duty" as limited to those acts involving "hazardous situations."

2. We have said that "[s]eparation of powers principles dictate the continued adherence to limited [judicial] review" in proceedings on certiorari. *Dokmo v. Indep. Sch. Dist. No. 11,* 459 N.W.2d 671, 674 (Minn.1990). Those principles are relevant in this case because the legislature vested the responsibility for "allow[ing] or disallow[ing] claims for * * * [disability] benefits payable from the fund" in

the PERA Board. Minn.Stat. § 353.03, subd. 3(b) (2004).

3. The ALJ recommended that the PERA Board grant Brittain's request for benefits under Minn.Stat. § 353.656, subd. 1. But the ALJ never explicitly found that Brittain's injury was tied to an act of duty or that he indeed was ever actually harassed. Instead, the ALJ "express[ed] no opinion on what really happened." It was enough for the ALJ to conclude that Brittain believed he was being harassed, and therefore the ALJ concluded that "the primary cause for [Brittain's] depression was the hostility which [he] perceived in his working environment." Thus, the ALJ's recommendation, which the Board rejected, sheds no light on the causation issue.

ord does not reflect that the PERA staff had an opportunity to conduct cross-examination during proceedings before the ALJ.[4]

In contrast to the majority's view, my review of the limited information in the record shows that the PERA staff did contest Brittain's claim for enhanced benefits under subdivision 1 and staff contended that Brittain had not met his burden of proof.[5] The majority characterizes the documents from the PERA staff as containing "argument, not evidence." The point, however, is that Brittain, not the PERA staff, had the burden of proof, and the PERA staff did not concede that Brittain had carried that burden. The PERA staff instead appears to have argued both that Brittain had not carried his burden, and that Brittain was not entitled to enhanced benefits because his injury did not arise from his performance of hazardous duties. The PERA Board decided this case based on the second argument, using what we have now found to be an erroneous construction of the statute. In my view, our decision on the legal question of the proper interpretation of the statute does not, on this record, vest this Court with the responsibility to resolve the first

argument regarding whether Brittain sustained his burden of proof. Rather, our standard of review dictates that this question should be resolved by the PERA Board on remand unless the evidence on the issue points all one way. My review of the record leads me to conclude that it does not.

In his brief, Brittain argues that his "disability arose directly from the performance of his job duties, such as following the orders of his sergeant, instructing fellow officers in the use of firearms, accepting and carrying out job assignments within the prisoner transportation unit, and difficult interaction with inmates." Brittain's brief contains no citation to record evidence to support these assertions. When asked at oral argument for the evidence to support these assertions, Brittain's counsel identified Exhibits 10 and 35.[6] Exhibit 10 is not helpful to the issue of *when* Brittain's supervisor supposedly harassed him as it is simply a job description.

Exhibit 35 comes a bit closer. This document, which is not signed, states that Brittain "asked questions about work safety issues, such as the safe number of

4. The proceedings before the ALJ were apparently not a "contested case under chapter 14." Minn.Stat. § 353.03, subd. 3(c) (2004). Moreover, although it appears the hearing before the ALJ was tape-recorded, the record contains neither a copy of the tape nor a copy of the transcript from the hearing.

5. For example, in a March 2, 2004 letter, the PERA staff stated that there was not "enough evidence to substantiate that [the] disabling condition is *duty* related." (Emphasis added). The record also contains a "Fact Sheet," dated August 30, 2004, from the PERA staff and directed to the Board that states: "Mr. Brittain's mental illness is not a result of the trauma normally associated with the *duties* of a deputy sheriff." (Emphasis added). The PERA staff also filed a document titled "Staff Exceptions to the Administrative law Judge's

Findings of Fact and Conclusions of Law, and Recommendation." In the exceptions, the PERA staff told the Board that "Brittain was experiencing increased anxiety as a result of personnel changes, office reorganization and his interaction with his supervisor, * * * not because of his duties as deputy sheriff, as outlined in the job description for that position." The PERA staff also stated that "the evidence demonstrated that it was not the nature of the work that Mr. Brittain performed that resulted in his disability. Rather it was his reaction to the management style of his supervisor that caused his depression."

6. Exhibit 35 is apparently what the majority characterizes as having been marked at Tab 35 and introduced as Exhibit 30 during the ALJ proceeding.

inmates to transport," and that his supervisor interpreted his "questions as complaints," called him a "male slug" when he "didn't fill the transport van with prisoners," and "threatened [him] with job transfers if [he] complained about officer safety." [7] Exhibit 35 appears to be what the majority refers to as the "best example" of evidence supporting a conclusion that the harassment Brittain perceived was incurred in or arose out of his performance of specific job duties. It is the *only* example I find in the record of any evidence that could be construed as supporting such a finding.

In contrast to Exhibit 35, when a Board member asked Brittain to describe "in [his] own words * * * what particular act of duty your disability arose out of," Brittain did not speak about officer safety, transporting prisoners or any other specific duty. Rather, he said: "I was required to be at work. I had a supervisor that told other deputies she was out to get me. So the fact that I had to go to work, be supervised by this supervisor, is my act of duty." Brittain's own words to the PERA Board contradict the majority's construction of the information contained in Exhibit 35. Accordingly, I cannot conclude that "the evidence was all one way" on the critical causation issue presented here. *Spurck,* 226 Minn. at 249, 32 N.W.2d at 580.

My review of the record leads me to conclude that while it may be undisputed that Brittain was harassed while he was at work, it is not undisputed that Brittain was harassed while he was performing specific acts of duty. The majority glosses over this distinction by contending that because the hostile work environment Brittain perceived "interrupted, impeded, or even prevented" performance of his duties, he was therefore entitled to enhanced benefits. This construction would entitle Brittain to enhanced benefits under the court of appeals' broad reading of the statute, but it is inconsistent, in my view, with the plain meaning of subdivision 1. Just because the hostility that Brittain experienced happened while he was at work does not mean that his injury was incurred in or arose out of an act of duty. If, for instance, Brittain was injured while wrestling with one of his coworkers during work hours, this injury would have "interrupted, impeded, or even prevented" Brittain from performing his duties. But the injury was not incurred in or arising out of an act of duty, and it would not entitle him to enhanced benefits.

In my view, there is a factual question about whether Brittain's injury was incurred in or arose out of an act of duty under Minn.Stat. § 353.656, subd. 1. Brittain's evidence in the record is not conclusive on this fact question. I would therefore reverse the decision of the court of appeals and remand this matter back to the Board for further proceedings consistent with an opinion that clarifies that enhanced benefits under subdivision 1 are not limited to injuries that arise from the performance of hazardous duties. Rather, enhanced benefits are available to the employee who shows that his injury happened while he was performing, or as a result of his performance of, specific job duties.

---

7. Appended to Exhibit 35 is the charge of discrimination Brittain filed with the Minnesota Department of Human Rights, affidavits from coworkers, and a document that appears to be a chronology. These attachments do not contain evidence of specific instances of harassment. They simply set forth general assertions that Brittain was harassed while he was at work. Moreover, the record indicates that the Minnesota Department of Human Rights dismissed Brittain's charge of discrimination for lack of probable cause.