[No. 36242-9-I.   Division One.   May 28, 1996.]

TIMOTHY C. DILLON, *Appellant*, v. SEATTLE POLICE PENSION BOARD, *Respondent*.

*Mark S. McCarty* and *Reaugh, Fischnaller & Oettinger, P.S.,* for appellant.

*Mark H. Sidran, City Attorney,* and *Gary E. Keese, Assistant,* for respondent.

ELLINGTON, J. — Timothy Dillon appeals the Superior

Court's order affirming the Seattle Police Pension Board decision that his mental disability was not "incurred in the line of duty." Dillon argues the Superior Court erred when it affirmed the Board's decision because the Board incorrectly applied the law and its decision was not supported by substantial evidence. We agree the Board's decision is not supported by substantial evidence and reverse.

Dillon was a police officer with the Seattle Police Department. While off duty in 1985, he shot himself in the hand while cleaning his gun. As a result of his injury, he was granted a disability retirement. In March 1988, the Seattle Police Pension Board found Dillon to be physically and mentally capable of working as a patrolman and ordered him to return to duty, despite a statement from his treating physician that he did not have "the function, control and ability, with the hand injury, to protect himself or others."

Almost immediately, Dillon's ability to perform his duties was questioned by fellow police officers. Dillon himself did not believe he could perform, and became anxious and depressed. He sought psychiatric treatment.

In March 1990, Dillon was granted a six–month mental disability leave. Then, in August 1990, the Pension Board canceled Dillon's disability leave and ordered him to return to duty on a trial basis for 60 days. However, the Board's decision was reversed by the Director of the Department of Retirement Systems, who found that a preponderance of evidence supported Dillon's contention that he was mentally disabled. The Director remanded the case to the Board for a determination of whether Dillon's disability was incurred in the line of duty. The Board found that Dillon's disability was not incurred in the line of duty.

Dillon filed a petition in King County Superior Court for review of the Board's decision by writ of certiorari. The court affirmed the Board, finding Dillon failed to meet his burden of proving the decision of the Board was not

supported by substantial evidence or was otherwise contrary to law. This appeal followed.

On appeal from an administrative decision reviewed by writ of certiorari, this court must determine de novo (1) whether the Seattle Police Pension Board committed an error of law when it concluded Dillon's disability was not caused in the line of duty[1] and (2) whether the Board's decision was supported by substantial evidence. *See* RCW 7.16.120(3), (5); *see also Hilltop Terrace Ass'n v. Island Cy.*, 126 Wn.2d 22, 29, 891 P.2d 29 (1995). Substantial evidence is evidence of a sufficient quantity " 'to persuade a fair–minded, rational person of the truth of the finding.' " *Id.* at 34 (quoting *State v. Maxfield*, 125 Wn.2d 378, 385, 886 P.2d 123 (1994)).

The statute does not define what constitutes an injury incurred in the line of duty, and no cases were found defining the phrase. However, an injury "incurred in the line of duty" is equivalent to an injury incurred "in the course of employment" as determined in workers' compensation cases.[2] Under workers' compensation laws, a worker who becomes disabled from an occupational disease is entitled to the same benefits as a worker who suffered an injury. RCW 51.32.180; *see also Kaiser Aluminum & Chem. Corp. v. McDowell*, 58 Wn. App. 283, 285, 792 P.2d 1269 (1990). An occupational disease is "such disease. or infection as arises naturally and proximately out of employment . . . ." RCW 51.08.140. Therefore, Dillon was required to prove that his mental disease arose "naturally and proximately" out of his employment.

A worker shows his disease was proximately caused by his work if he establishes he would not have contracted the disease, but for the aggravating condition of his job. *Dennis v. Department of Labor & Indus.*, 109 Wn.2d

---

[1]Whether or not Dillon is disabled is not an issue on appeal.

[2]RCW 41.26.120 is "a statute in the nature of a workers' compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment." LAWS OF 1985, ch. 102, § 1, at 493.

467, 477, 745 P.2d 1295 (1987). The worker must establish, by competent medical testimony, that his job probably (as opposed to possibly) caused his disease. *Id.*

The medical evidence in this case established that, but for the aggravating condition of his job, Dillon would not have been disabled by his condition. Dillon presented evidence from three medical providers which was uncontradicted. Although Dillon's caregivers never used the exact words,[3] their testimony established that his job probably, as opposed to possibly, caused his disease. The evidence from Dr. H. Berryman Edwards, who evaluated Dillon on behalf of the Board and concluded that Dillon was not mentally disabled, did not contradict the evidence of Dillon's medical providers on this point. Dillon, therefore, established that his disability was proximately caused by his job.

■ To establish that a disease arose "naturally" out of employment,

> a worker must establish that his or her occupational disease came about as a matter of course as a natural consequence or incident of distinctive conditions of his or her particular employment. The conditions need not be peculiar to, nor unique to, the worker's particular employment. Moreover, the focus is upon conditions giving rise to the occupational disease, or the disease–based disability resulting from work–related aggravation of a nonwork–related disease, and not upon whether the disease itself is common to that particular employment. The worker, in attempting to satisfy the "naturally" requirement, must show that his or her particular work conditions more probably caused his or her disease or disease–based disability than conditions in everyday life or all employments in general; the disease or disease–based disability must be a natural incident of conditions of that worker's particular employment. Finally, the conditions causing the disease or disease–based disability must be conditions

---

[3]The Board's argument implies that Dillon failed to establish his disability was incurred on the job because testimony established only that it was "duty–related" or "stemmed from" his job. However, the clear import of the medical testimony is that Dillon's disabling condition was caused by his job.

of *employment*, that is, conditions of the worker's particular occupation as opposed to conditions coincidentally occurring in his or her workplace.

*Dennis*, 109 Wn.2d at 481.

Dillon also established by competent evidence that his condition arose "naturally" out of his employment. According to Dillon's experts, he developed psychological problems because of his concerns about performing in his dangerous occupation. They concluded Dillon's condition was his understandable response to being required to work with an injured hand, which caused him to overreact in confrontations. All of the medical experts confirmed Dillon suffered genuine pain and dysfunction from his hand injury. The Board's expert, Dr. Edwards, acknowledged that Dillon suffered "from real and significant [physical] pain and dysfunction" which caused Dillon's difficulties in the police department.

Dillon established that the conditions causing his disability were conditions of his particular employment, rather than conditions coincidentally occurring in his workplace, or conditions in everyday life or employment in general. Dillon was not alone in believing that because of his injury he could not perform his duties; statements from two police officers (both Field Training Officers) indicated that Dillon's hand injury impaired his performance as an officer. One such training officer reported,

> Officer Dillon's performance in the area of officer safety and the handling of combative suspects and/or prisoners alarms this FTO. Though Officer Dillon's actions have been proper and appropriate, he seems greatly disadvantaged by his injured hand. This disadvantage is enhanced by the failure of other officers to perceive Dillon's reduced physical ability, expecting that he will perform in a manner consistent with his size. The situation arises wherein Officer Dillon is unable to fulfil [sic] this expectation, and thus, other officers are caught in a position of surprise [sic]. Officer Dillon, then, in an effort to maintain immediate control, may be forced to resort to more aggressive alternatives simply because other

officers may not be prepared to assist in a task which they reasonably presume Dillon is capably [sic] of handling.

Dillon's own caregivers concluded he would not have become mentally disabled had his employment not required him to protect himself and others in threatening situations. Dillon thus showed that his disability arose "naturally" from his employment.

The Board relies upon *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 828 P.2d 1138 (1992). McClelland worked at ITT Rayonier's pulp mill in progressively more complex and responsible jobs over 25 years. As his responsibilities increased, McClelland felt less able to handle the work and became preoccupied with fears that he would make a mistake with serious consequences. He became severely depressed and contemplated suicide.

On appeal from denial of workers' compensation benefits, the reviewing court found that McClelland failed to create an issue of material fact as to whether his disease arose "naturally and proximately" out of his employment, because he suffered from a preexisting organic brain dysfunction and any responsibility caused him stress. *McClelland*, 65 Wn. App. at 393–94.

In contrast to *McClelland*, the evidence in this case does not show that Dillon would have suffered from disabling depression and stress no matter what job he had. Rather, the evidence shows that he would not have been mentally disabled but for the stress caused by his belief that he was unable to properly perform his police duties because of his physical limitations. Indeed, Dillon functioned adequately on patrol prior to his injury.[4]

From this evidence, which was uncontradicted, a fair-minded, rational person would objectively conclude that Dillon's mental disability resulted from the stress of being

---

[4]The Board cites evidence of incidents involving a domestic situation between Dillon and his former girlfriend, and implies that these incidents demonstrate Dillon's mental disability had a nonwork-related cause. However, these incidents occurred between February and August, 1990 — after Dillon was disabled. Dillon's mental disability leave began in March, 1990.

required to perform the duties of a patrol officer with his physical limitations, and was therefore incurred in the line of duty — that is, as a natural and proximate result of his specific employment.

The Board gave no indication of the reasons for its conclusion that Dillon's disability was not incurred in the line of duty. All of the experts who concluded that Dillon was mentally disabled also concluded his job was the cause of his disability. Nothing in the record reflects that the Board found Dillon's experts to lack credibility. The Board's decision is therefore not supported by sufficient evidence.

The decisions of the Superior Court and the Board are reversed, and this matter is remanded for further proceedings consistent with this opinion.

AGID and COX, JJ., concur.