928 P.2d 423 (1996)
84 Wash.App. 387
Albert WOLDRICH, Appellant,
v.
VANCOUVER POLICE PENSION BOARD, et al., Respondents.
No. 18631-4-II.
Court of Appeals of Washington, Division 2.
November 15, 1996.
Publication Ordered January 3, 1997.
*424 Judith Martha Zeider, Assistant City Attorney, Vancouver, for Respondents.
Mark S. McCarty, Campiche, Hepburn, McCarty & Bianco, Seattle, for Appellant.
TURNER, Judge.
Albert Woldrich appeals from a superior court order affirming a Vancouver Police Pension Board (the Board) decision granting him a permanent disability retirement from the Vancouver Police Department, but denying that his disability was incurred in the line of duty. He claims that his disabling psychological disorder resulted from the stress of his employment; the Board argues that his mental disability was instead brought on by a disciplinary demotion, and was not incurred in the line of duty. We affirm.
Woldrich's disabling symptoms began shortly after he learned from a superior officer that he would soon be demoted for disciplinary reasons from sergeant to patrol officer. His anger, anxiety, and stress manifested themselves in physical and psychological symptoms, and he never returned to work after hearing this news. These symptoms gradually resolved into an ongoing persecution complex which rendered him psychologically unfit for duty.[1] The Board *425 granted him a full disability retirement, but declined to certify that the disability occurred in the line of duty. The sole issue on appeal is whether the Board correctly ruled that Woldrich's disability was not incurred "in the line of duty."[2]
Whether a disability was incurred in the line of duty is ultimately an issue of law. See Newlun v. Department of Retirement Sys., 53 Wash.App. 809, 820, 770 P.2d 1071, review denied, 113 Wash.2d 1014, 779 P.2d 731 (1989). We accord substantial weight to the agency's view of the law it administers if the matter falls within the agency's field of expertise. Newlun, 53 Wash.App. at 820, 770 P.2d 1071.
Woldrich claims that the phrase "in the line of duty" equates to "in the scope of employment," and argues that any disability by a law enforcement officer which results from his employment, including a disciplinary demotion, is incurred in the line of duty. The Board contends that an award of a duty-related disability allowance to Woldrich because of his demotion would go well beyond the public policy goals of RCW 41.26, the Law Enforcement Officers' and Firefighters' Retirement System (LEOFF).[3] Duties of a police officer or police sergeant do not include being demoted, they argue.
A worker shows that his disease was proximately caused by his work if he establishes that he would not have contracted the disease, but for the aggravating condition of his job. Dennis v. Department of Labor and Indus., 109 Wash.2d 467, 477, 745 P.2d 1295 (1987). The worker must establish, by competent medical testimony, that his job probably (as opposed to possibly) caused his disease. Dennis, 109 Wash.2d at 477, 745 P.2d 1295.
A police officer's disability is incurred "in the line of duty" if the disability arose as a "natural and proximate result" of the officer's specific employment. Dillon v. Seattle Police Pension Bd., 82 Wash.App. 168, 174-75, 916 P.2d 956 (1996). To establish that a disease arose "naturally" out of his or her employment, a worker must show:
that his or her occupational disease came about as a matter of course as a natural consequence or incident of distinctive conditions of his or her particular employment. The conditions need not be peculiar to, nor unique to, the worker's particular employment. Moreover, the focus is upon conditions giving rise to the occupational disease, or the disease-based disability resulting from work-related aggravation of a nonwork-related disease, and not upon whether the disease itself is common to that particular employment. The worker, in attempting to satisfy the "naturally" requirement, must show that his or her particular work conditions more probably caused his or her disease or disease-based disability than conditions in everyday life or all employments in general; the disease or disease-based disability must be a natural incident of conditions of that worker's particular employment. Finally, the conditions causing the *426 disease or disease-based disability must be conditions of employment, that is, conditions of the worker's particular occupation as opposed to conditions coincidentally occurring in his or her workplace.
Dillon, 82 Wash.App. at 172-73, 916 P.2d 956 (citing Dennis, 109 Wash.2d at 481, 745 P.2d 1295).
The issue is one of statutory construction under LEOFF. RCW 41.26.120 and .125 assign to local police pension boards the task of determining if a disability was incurred "in the line of duty." Nowhere does LEOFF define the concept of "in the line of duty," nor do the parties direct us to a definition located elsewhere in statutory or administrative law. Nevertheless, in Doke v. United Pac. Ins. Co., 15 Wash.2d 536, 543-44, 131 P.2d 436 (1942), the Washington State Supreme Court found the phrase unambiguous.
In Doke, a Washington National Guard soldier was injured while crossing the street on his way to the guard's weekly drill formation. Doke quoted an opinion of the United States Attorney General in holding that "the line of duty" in the context of military service means "in consequence of the ordinary performance of [one's] military duty, or in the performance of any special act of military duty...." 15 Wash.2d at 543, 131 P.2d 436. Doke is particularly relevant here because police officers may be likened to the civilian counterparts of guardsmen.
Other cases provide further examples of the concept of disability incurred in the line of duty. In Allen v. Thurston County Fire Prot. Dist. No. 9, 68 Wash.App. 1, 841 P.2d 1265 (1992), a fire chief was disabled in the line of duty when he suffered a heart attack while at work. In Engstrom v. Seattle, 92 Wash. 568, 159 P. 816 (1916), a public works employee was injured in the line of duty through a railroad company's negligence while performing his job for the city.
In Dillon, Division One of this court reviewed a Seattle Police Pension Board decision denying "incurred in the line of duty" disability benefits to a police officer who claimed that his mental disability was duty-related. 82 Wash.App. at 170, 916 P.2d 956. The officer was granted a disability retirement when he injured his hand in 1985. In 1988, the pension board found him to be capable of working, and ordered him to return to duty. The officer did so, but became anxious and depressed because he did not believe he was physically able to perform. In 1990, he was granted a mental disability retirement. The officer contested the pension board's finding that his mental disability was not incurred in the line of duty. The Court of Appeals reversed, finding that the pension board had insufficient evidence to support its findings. It reasoned that the particular conditions of a police officer's employment required him to be physically able to handle combative suspects and dangerous situations. It ruled that the officer had presented uncontradicted evidence that he would not have become mentally disabled but for the stress caused by being forced to work with an injured hand. Rather than it being a condition that could arise in any occupation or workplace, the officer met his burden of showing that his mental disability naturally and proximately resulted from his concern over his inability to perform his specific police duties. Dillon, 82 Wash.App. at 173, 916 P.2d 956.
Here, the record of the Board's meeting of March 8, 1993, sheds light on its finding that Woldrich's disability was not incurred in the line of duty. Two members of the Board, Kanekoa and Shorthill, opined in essence that the disability was not duty-related because it did not arise from anything Woldrich did or that happened to him while performing the duties of police work, such as a shooting, but from his disciplinary issues with supervisors and their demotion of him.
We give great weight to an agency's interpretation of the statutes it administers. We agree with the Vancouver Police Pension Board that Woldrich's mental disability was not incurred in the line of duty. The Board's determination was supported by substantial evidence. Unlike Dillon, Woldrich failed to meet his burden of showing that his mental disability arose as a natural consequence or incident of distinctive conditions of police work. Woldrich's disability was caused by his demotion, which was caused in turn by *427 supervisors' dissatisfaction with his job performance.[4]
We defer to the pension board's interpretation that a stress reaction to a disciplinary demotion under these circumstances is not a disability incurred in the line of duty.
Affirmed.
SEINFELD, C.J., and HOUGHTON, J., concur.
NOTES
[1] Three mental health professionals saw Woldrich in the months following the news of his impending demotion, and all agreed that the demotion was the cause of his stress reaction. Chuck Houston, MSW, reported on October 22, 1992, that Woldrich was "having symptoms of anxiety and depression associated with his loss of rank." His symptoms included diarrhea and muscle tension. Dr. Robert Turco, a psychiatrist, reported on October 22, 1992, that although Woldrich suffered stress associated with his demotion from sergeant, he did not have a psychiatric problem, but could have a paranoid personality disorder.

Dr. Robert Gross, a treating psychiatrist, perceived more serious problems. He reported on December 11, 1992, that Woldrich had appeared at his office in "quite an agitated state;" he had suffered a severe anxiety attack as a result of the demotion and was taking tranquilizers. Dr. Gross diagnosed Woldrich with a serious paranoid delusional disorder and a paranoid personality disorder, and he prescribed Haldol "to help with his delusions." Dr. Gross was unable to determine a cause for Woldrich's psychological disability. He was unaware of any off-the-job stressors, and observed that "[a]lmost all of [Woldrich's] paranoid delusional material is focused at the police department," where he believed others "had it in for him." Dr. Gross opined that it was likely that the major cause of Woldrich's disability was his employment with the police department.
Dr. Turco saw Woldrich again in January of 1993, and reported that although he still believed that Woldrich did not have a psychiatric disorder, he and Dr. Gross were not far apart in their respective diagnoses of paranoid personality and paranoid delusional disorder.
[2] Woldrich is still entitled to a full pension. He is contesting the Board's determination for the purpose of obtaining better federal income tax treatment of his retirement benefits.
[3] Specifically, RCW 41.26.120 (retirement for disability in the line of duty).
[4] The record indicates, for example, that he had been reprimanded for using the police telephone and facilities to arrange softball tournaments and other sporting events, and to operate a private firewood business. His failure to desist from these activities contributed to his disciplinary demotion.