

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ROGER A. STREET,

        Respondent,

    v.

WEYERHAEUSER COMPANY,

        Appellant.

No. 75644-3-I

DIVISION ONE

UNPUBLISHED

FILED: November 28, 2016

Cox, J. – Weyerhaeuser Co. appeals the trial court's judgment on a jury verdict in Roger Street's appeal from an adverse determination by the Board of Industrial Insurance Appeals. At issue is whether Street's chronic low back condition is an occupational disease that arose naturally and proximately out of his distinctive employment conditions. Because substantial evidence supports the jury's verdict, we affirm.

Street worked for either Weyerhaeuser or its subsidiary for his entire career. He first worked as a logger. Starting in 1991, he worked in various positions in a paper mill. His duties included moving 40 to 50 inch diameter rolls of paper. At times, Street had to "manhandle" rolls of paper to move them, which included twisting and pushing the rolls on conveyor belts. On average, these rolls weighed 1,000 pounds. Street's job also required that he repetitively load "cores," which weighed between 1.5 and 15 pounds.

In 2013, Street applied for workers' compensation benefits for a lower back condition. The Department of Labor and Industries denied his claim.

An Industrial Insurance Appeals Judge reversed the Department. The proposed decision and order stated that Street's manhandling of heavy paper rolls constituted distinctive conditions of employment. This decision further stated that Street's back condition arose "naturally and proximately" out of such distinctive employment conditions.

Weyerhaeuser petitioned for review to the Board of Industrial Insurance Appeals (the "Board"). The Board ruled that there was no showing of distinctive employment conditions. And the Board further ruled there was no showing that Street's back condition arose "naturally and proximately" out of any distinctive employment conditions.

On appeal to the superior court, a jury decided that the Board's decision and order was incorrect. The jury further found that Street's condition is an occupational disease.

Weyerhaeuser appeals.

## OCCUPATIONAL DISEASE

Weyerhaeuser primarily argues that Street must present expert medical testimony showing that his work conditions were distinctive to his employment in order to establish an occupational disease. Essentially, this is a challenge to the sufficiency of the evidence supporting the jury verdict. We hold that there is sufficient evidence to support the jury's verdict.

The Industrial Insurance Act (IIA) governs the standard of review in workers' compensation cases, where an evidentiary hearing occurs only at the

2

Board.[1] The party challenging the Board decision in the superior court bears the burden of proving that the Board's findings and decision were not prima facie correct.[2] The superior court reviews de novo the Board's decision but does so solely on the Board record.[3] The superior court may substitute its own findings and decision for the Board's only if the superior court finds that the Board's findings and decision are incorrect by a preponderance of the credible evidence.[4]

In reviewing the superior court's decision, we review the record in the light most favorable to the party who prevailed in superior court.[5] We determine whether substantial evidence supports the jury verdict.[6] Substantial evidence is "'evidence sufficient to persuade a fair-minded, rational person of the truth of the matter.'"[7] We review de novo the trial court's conclusions of law.[8]

Under RCW 51.08.140, an occupational disease is a disease that "arises naturally and proximately out of employment." In this case, the parties

---

[1] Potter v. Dep't of Labor & Indus., 172 Wn. App. 301, 310, 289 P.3d 727 (2012); see also RCW 51.52.100; RCW 51.52.115; RCW 51.52.140.

[2] Zavala v. Twin City Foods, 185 Wn. App. 838, 858, 343 P.3d 761 (2015).

[3] Potter, 172 Wn. App. at 310.

[4] Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999).

[5] Zavala, 185 Wn. App. at 859.

[6] Cedar River Water & Sewer Dist. v. King County, 178 Wn.2d 763, 777, 315 P.3d 1065 (2013).

[7] Dep't of Labor & Indus. v. Lyons Enters., 185 Wn.2d 721, 731, 374 P.3d 1097 (2016) (quoting R & G Probst v. Dep't of Labor & Indus., 121 Wn. App. 288, 293, 88 P.3d 413 (2004)).

[8] Potter, 172 Wn. App. at 310.

disagree about what is required to establish whether a disease arises naturally out of employment. Weyerhaeuser argues that Street must present expert medical testimony showing that his work conditions were distinctive to his particular employment and caused his back condition. Street disagrees. We agree with Street.

Dennis v. Department of Labor & Industries[9] is instructive. There, Kenneth Dennis had joint osteoarthritis in his wrists, and his job required that he cut metal with tin snips for four to five hours a day.[10] Dennis pursued an occupational disease claim.[11]

The parties disputed whether Dennis's disabling wrist condition arose naturally out of his employment.[12] The supreme court explained that "[t]he *causal* connection between a claimant's physical condition and his or her employment must be established by competent *medical testimony* which shows that the disease is probably, as opposed to possibly, caused by the employment."[13] In that case, the court stated there was "sufficient medical evidence in the record from which a trier of fact could infer the required causal connection" that the osteoarthritis in Dennis's wrists was rendered symptomatic

---

[9] 109 Wn.2d 467, 477, 745 P.2d 1295 (1987).

[10] Id. at 469.

[11] Id.

[12] Id. at 478.

[13] Id. at 477 (emphasis added); see also Sacred Heart Med. Ctr. v. Dep't of Labor & Indus., 92 Wn.2d 631, 636-37, 600 P.2d 1015 (1979).

4

by repetitive tin snipping.[14] The court further stated that the "proximately" requirement was not seriously in dispute in that case.[15]

Similarly, here, we do not perceive any serious dispute whether there was sufficient evidence tying Street's back condition to his work. Street testified at the hearings, along with his former supervisor, his primary care physician, and the osteopathic physician for Street's pain management.

Street's primary care physician, whose testimony is to be given special consideration under the circumstances, testified that she diagnosed Street with "chronic low back pain related to degenerative arthritis" and "[d]egenerative disease of the spine."[16] She opined, on a more probable than not basis, that Street's heavy work generated mechanical loading that caused his degenerative disc condition.

There was testimony on behalf of Weyerhaeuser that was designed to refute this and other testimony on behalf of Street. The evaluation of witness credibility is the province of the jury and is not reviewable by this court.[17] We see no reason to depart from the rule that we review the sufficiency of the evidence in the light most favorable to the party who prevailed in superior court: Street.

---

[14] Id.

[15] Id. at 478.

[16] Potter, 172 Wn. App. at 312.

[17] See State v. Andy, 182 Wn.2d 294, 303, 340 P.3d 840 (2014).

We move to consideration of the real dispute: whether medical testimony is required to fulfill the other requirements of an occupational disease. Again, we turn to Dennis.

The supreme court focused on the "naturally" language of the governing statute after considering the "proximately" language.[18] In the context of the statute, this word "naturally" is linked to the requirement that the occupational disease must "arise out of employment."[19]

After discussing, at length, this requirement, the court held:

> [A] worker must establish that his or her occupational disease came about as a matter of course as a natural consequence or incident of **distinctive conditions** of his or her particular employment. The conditions need not be peculiar to, nor unique to, the worker's particular employment. Moreover, the focus is upon conditions giving rise to the occupational disease, . . . and not upon whether the disease itself is common to that particular employment. The worker, in attempting to satisfy the "naturally" requirement, must show that his or her **particular work conditions more probably caused his or her disease or disease-based disability than conditions in everyday life or all employments in general**; the disease or disease-based disability must be a natural incident of conditions of that worker's particular employment. Finally, the conditions causing the disease or disease-based disability must be conditions of employment, that is, conditions of the worker's particular occupation as opposed to conditions coincidentally occurring in his or her workplace.[20]

In that case, Dennis and his attending physician testified.[21] The physician testified "that it was reasonable to assume that the localization of pain in

_____

[18] Dennis, 109 Wn.2d at 479.

[19] Id. at 480.

[20] Id. at 481 (emphasis added).

[21] Id. at 469

[Dennis's] wrists was related to his occupation."[22] The Board found that the continued use of tin snips for four or five hours per workday "exacerbated Dennis's preexisting osteoarthritis in his wrists, which became disabling."[23] The supreme court determined that the attending physician presented uncontroverted medical testimony "that more probably than not[,] Dennis's repetitive use of tin snips made the osteoarthritis in his wrists symptomatic and disabling."[24] Thus, the supreme court concluded that the medical evidence in the record was "sufficient to support the inference that Dennis's disabling wrist condition arose naturally and proximately out of his employment."[25]

Here, Street's attending physician provided similar testimony. She tied Street's lower back pain to the job that he was doing, on a more probable than not basis. She testified that she understood Street's job involved, among other things, heavy lifting and pushing of heavy rolls.

There was also testimonial evidence by Street and others that described the bending and pushing nature of Street's jobs in "manhandling" the paper rolls that he worked with in the paper mill. In other words, sufficient evidence exists in this record for the jury to have found that such manhandling of paper rolls was a distinctive condition of employment at the paper mill.

---

[22] Id. at 483.

[23] Id. at 477.

[24] Id. at 469, 483.

[25] Id. at 477, 483.

Moreover, there is sufficient evidence to show that Street's chronic back pain related to degenerative arthritis and degenerative disease of the spine arose naturally and proximately out of distinctive conditions of his employment with Weyerhaeuser.

Weyerhaeuser claims that medical testimony is required to fulfill the requirement of showing the "naturally" part of the statutory definition. It purports to rely on Dennis for this proposition.

Nowhere in the last passage from that case, quoted earlier in this opinion, did the court state any such requirement. Nowhere in the jury instructions in this case is there any statement of such a requirement. The requirement does not, in our view, exist on the basis of any of the authorities that Weyerhaeuser argues.

For example, in Gast v. Department of Labor & Industries, Vickie Gast alleged an occupational disease caused by stress arising out of her employment.[26] Gast worked as a maintenance laborer, and rumors developed about her relationships with male coworkers.[27] Gast filed a benefits application with the Department, claiming that her coworkers' rumors, innuendos, and inappropriate comments were distinctive conditions of her employment.[28] The Department argued that such rumors or comments "coincidentally exist[ed] in the

---

[26] 70 Wn. App. 239, 241, 852 P.2d 319 (1993).

[27] Id.

[28] Id. at 242.

workplace, . . . occur[red] in everyday life and employment in general, and [were] not distinctive conditions of employment."[29]

Division Three of this court concluded that the trial court "correctly determined as a matter of law that rumors, innuendos, and inappropriate comments by coworkers are not distinctive conditions of employment."[30] The court further stated that "[s]uch conditions are unfortunate occurrences in everyday life or all employments in general. Their occurrence at a specific workplace is coincidental and not a natural consequence or incident of distinctive employment conditions."[31]

The opinion does not refer to any requirement of expert medical testimony or state that Gast's claim failed because she did not present medical testimony showing that her work conditions were distinctive to her particular employment and caused her alleged disease.

Similarly, in <u>Woldrich v. Vancouver Police Pension Board</u>,[32] Division Two of this court determined that Albert Woldrich failed to establish that his disability arose as a natural consequence of distinctive employment conditions.[33]

The opinion neither references expert medical testimony nor states that Woldrich's claim failed because he did not present medical testimony showing

---

[29] Id.

[30] Id. at 243.

[31] Id.

[32] 84 Wn. App. 387, 391-93, 928 P.2d 423 (1996).

[33] Id. at 393.

that his work conditions were distinctive to his particular employment and caused his disability.

In Potter v. Department of Labor & Industries, the Board concluded that Jane Potter did not sustain an occupational disease within the meaning of RCW 51.08.140.[34] There, Potter worked in a newly remodeled law office and argued that defective ventilation in the office, combined with the odor emanating from the new blinds in the office, caused her multiple chemical sensitivity disorder.[35] In rejecting Potter's claim, the Board stated that it had "evidence of use of certain chemicals in the remodel, some of which can cause neurological symptoms in certain quantities, but no evidence of exposure to anything other than permissible limits."[36] The Board also noted that "'[r]emodels are everywhere, and by no means limited to law offices, or to work for that matter.'"[37] The trial court affirmed the Board's decision, and we affirmed the trial court.[38]

Although Potter did present medical testimony, we concluded that Potter provided no evidence that her office exposed her to a greater risk of contracting her disorder than other environments she had encountered.[39] Like the previous two cases discussed above, the opinion does not state that Potter's claim failed

---

[34] 172 Wn. App. 301, 308, 289 P.3d 727 (2012).

[35] Id. at 304, 306, 315-16.

[36] Id. at 308.

[37] Id. at 316.

[38] Id. at 309, 316.

[39] Id. at 316.

because she did not present expert medical testimony showing that her work conditions were distinctive to her particular employment and caused her disorder.

In sum, Dennis and opinions that follow do not support the argument that occupational disease claimants are required to present medical testimony showing that his or her work conditions are distinctive to his or her particular employment. Expert medical testimony is, of course, required to show causation between the disease and the employment. That was done in this case.

We note also that the relevant jury instruction in this case, to which Weyerhaeuser did not take exception, did not require such medical testimony. Rather, Instruction Number 14 provided:

> Proof that the condition arose naturally and proximately out of the employment must be established at least in part through expert testimony. The causal connection must be found to exist as a matter of probability; that is, more probably true than not true. An expert opinion that causation is only possible is not sufficient to prove proximate causation.[40]

In sum, Street was not required to present expert medical testimony to show that his "job duties and activities working for Weyerhaeuser constitute distinctive conditions of employment sufficiently different from his activities of everyday life."[41]

Weyerhaeuser argues that "whether particular work conditions constitute[] a 'distinctive' cause of a medical condition presents a medical question."[42] It

---

[40] Clerk's Papers at 526.

[41] Id. at 534.

[42] Brief of Appellant at 19.

relies on Dennis and Zipp v. Seattle School District No. 1[43] to support this argument. It specifically states that "issues of medical causation must be proved through expert testimony."[44]

We agree that issues of medical causation must be proven with expert medical testimony. That was done in this case by Street's attending physician, whose testimony must be given special consideration and tied Street's low back pain to his employment conditions.

But neither Dennis nor Zipp supports the argument that expert medical evidence is required for other questions, specifically the one before us.

Weyerhaeuser also argues that the supreme court's discussion in Dennis about the medical testimony presented in that case "was very limited and did not purport to provide an exhaustive account of the attending physician's testimony as to the distinctiveness of the claimant's work exposure."[45] Other than implicitly conceding that this case does not support the proposition that it argues, we do not find this observation helpful. If anything, the lack of discussion in Dennis about the attending physician's testimony as to the distinctive work conditions further supports the conclusion that such expert medical testimony is not required.

Lastly, Weyerhaeuser argues that the legislature's use of the phrase "arising out of" to define an occupational disease requires medical testimony to

---

[43] 36 Wn. App. 598, 601, 676 P.2d 538 (1984).

[44] Brief of Appellant at 19 (citing Dennis, 109 Wn.2d at 477).

[45] Reply Brief of Appellant at 14.

demonstrate the requisite distinctive employment conditions. It specifically argues that the phrase "arising out of" reflects the legislature's intent to require a causation analysis in determining whether a claimant's condition arose naturally from his or her employment. We do not read the supreme court's exhaustive discussion in Dennis to be consistent with this novel argument. Thus, we reject it.

## ATTORNEY FEES AND COSTS

### At Trial

Weyerhaeuser requests that we reverse the trial court's attorney fees and costs award to Street. Because we affirm the trial court's judgment in favor of Street, we decline to reverse the trial court's award of attorney fees and costs.

### On Appeal

Street requests attorney fees and costs on appeal as a prevailing party under RCW 51.52.130. We grant Street's request for attorney fees and costs, subject to his compliance with RAP 18.1(d).

RCW 51.52.130 authorizes this court to grant reasonable attorney fees and costs "where a party other than the worker . . . is the appealing party and the worker's . . . right to relief is sustained." Here, Street did not appeal, and we affirm the trial court's judgment in his favor. Thus, we grant Street's request for attorney fees and costs.

We affirm the judgment on the jury verdict and award Street fees on appeal, subject to his compliance with RAP 18.1(d).

_____ Cox, J.

WE CONCUR:

_____          _____