# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DANIEL BRAY, individually, and JOEY TRACY, individually, | No. 57026-2-II |
| Appellants, | |
| v. | |
| PIERCE COUNTY, a subdivision of the State of Washington, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Former Pierce County Sheriff's Deputies Daniel Bray and Joey Tracy (collectively, the Deputies) appeal the superior court's order granting summary judgment dismissal of their claim against Pierce County for wrongful discharge in violation of public policy. The Deputies argue that the superior court erred by granting summary judgment dismissal of the claim because genuine issues of material fact exist as to whether they were constructively discharged.

We hold that judicial estoppel precludes the Deputies from creating a genuine issue of material fact as to whether they were constructively discharged. Accordingly, we affirm the superior court's order granting summary judgment dismissal of the wrongful discharge in violation of public policy claim.

FACTS

A.    INCIDENTS WHILE WORKING FOR PIERCE COUNTY SHERIFF'S DEPARTMENT

The Pierce County Sheriff's Department (PCSD) hired Bray and Tracy in 2012. In February 2015, the Deputies responded to a call and found a deceased mother and daughter. Bray found a suicide note from the mother detailing how the mother killed the daughter and then herself.

In April 2015, a separate incident occurred. *Bray v. Pierce County*, No. 53080-5-II, slip op. at 2 (Wash. Ct. App. Jan. 5, 2021) (unpublished).[1]  A different PCSD deputy returned a handgun and loaded magazine to a man who had just been served with a domestic violence temporary protection order. *Id.* at 2-3.  The man later used the handgun to kill his wife, wound her friend, and kill himself. *Id.* at 3.  The Deputies (Bray and Tracy) responded to the shooting. *Id.*

B.    REPORTING AND PCSD'S ALLEGED RETALIATION

The Deputies reported the April 2015 incident to their supervisors, disclosing that another PCSD deputy had given the murder weapon to the shooter. *Id.*  The Deputies told their supervisors that giving a firearm to the subject of a domestic violence dispute while serving a temporary protection order was improper, contrary to officer training, against the County's policies and procedures, and unlawful. *Id.* at 3-4.  The Deputies continued to make reports to the PCSD and the County because they were unsatisfied with the County's response and its failure to conduct an investigation. *Id.* at 4.

Following the Deputies' reports about the April 2015 incident, the PCSD took numerous actions that the Deputies perceived to be retaliation for whistle blowing.  The Deputies alleged that

---

[1]  https://www.courts.wa.gov/opinions/pdf/D2%2053080.5-II%20Unpublished%20Opinion.pdf.

supervisors threatened to demote the Deputies and separate the Deputies from working with each other. Supervisors also told the Deputies to not perform certain job duties or go to certain locations without specific requests or approval. And a supervisor emailed other officers to tell them that the Deputies needed close monitoring for unstated reasons. The email stated that other officers should deny certain requests the Deputies made and prevent the Deputies from doing certain types of work, but not remind the Deputies if they forgot to write a report and instead allow the Deputies to "sink on their own." Clerk's Papers (CP) at 595.

The PCSD also initiated eight internal affairs investigations of Bray and four internal affairs investigations of Tracy. Tracy alleged several more incidents of retaliation following his arrest on criminal charges that were eventually dismissed.

C.   MEDICAL CONDITIONS AND LEAVE

After responding to the murder-suicide in February 2015, Bray began to experience mental health issues, including flashbacks, sleep problems, anxiety, and experiences similar to panic attacks. Bray began seeking treatment from a clinical psychologist who diagnosed Bray with post-traumatic stress disorder (PTSD) proximately caused by the February 2015 murder-suicide. The clinical psychologist determined that the PTSD was exacerbated by Bray's experience of being mistreated by the PCSD. In fall of 2015, another doctor determined that Bray suffered from symptoms consistent with PTSD and should not be working.

In November 2015, Bray went on medical leave and stopped working. In February 2016, Bray saw a psychiatrist. The psychiatrist diagnosed Bray with PTSD that was causally related to the February 2015 murder-suicide. The psychiatrist also determined that that "Mr. Bray's

3

experience of hostility and betrayal from his employer is another natural and proximate cause that resulted in his disability and inability to work." CP at 707.

In October 2015, Tracy took medical leave for a hand injury. Tracy also started seeing a licensed mental health counselor. The licensed mental health counselor determined that Tracy was experiencing PTSD symptoms stemming from trauma-related flashbacks and Tracy's experience of harassment by the PCSD. From late 2015 to early 2016, several medical providers determined that Tracy needed time off from work to improve his mental health conditions.

D.      SEPARATION FROM EMPLOYMENT

On December 9, 2016, the PCSD separated the Deputies from their employment. The PCSD provided the Deputies with separate notices stating that the Deputies had a medical condition preventing them from performing the essential functions of their jobs. In the separation notices, the PCSD informed the Deputies that they were separated in good standing and that, should their health improve, the County would

> assist you in your employment search by placing your name on a re-employment register for upcoming vacant positions for which you are otherwise qualified and for which you are medically released to work. You would remain on this list for one year from your separation date or until an offer of employment is made, whichever is earlier.

CP at 1032, 1106.

Following receipt of the separation notice, Bray applied for duty-related disability retirement benefits. An administrative law judge (ALJ) held a hearing regarding Bray's application. Bray's application for duty-related disability retirement benefits stated that his injury had been diagnosed by five doctors as PTSD and directly related to his duties as a deputy sheriff. At the hearing, Bray testified that he took medical leave to treat his PTSD arising from the February

4

2015 murder-suicide. Bray also testified that the retaliation he faced for whistleblowing did not cause his PTSD, and he believed his PTSD was caused by the February 2015 murder-suicide. Bray was ultimately awarded catastrophic disability benefits.[2]

Tracy also applied for duty-related disability retirement benefits. An ALJ held a hearing regarding Tracy's application. At the hearing, Tracy testified that he thought the February 2015 murder-suicide caused his PTSD. Tracy also testified that his medical treatment was related to the February 2015 murder-suicide. Tracy further testified that the PCSD separated him from his employment "[d]ue to [his] ongoing medical issues." CP at 46. Tracy was ultimately awarded catastrophic disability benefits.

---

[2] The Washington Administrative Code (WAC) regarding catastrophic disability provides:

(1) If the [Department of Retirement Systems] determines you are disabled and you became disabled in the line of duty, you qualify for a catastrophic duty disability if:
    (a) The disability or disabilities that qualified you for a LEOFF Plan 2 duty disability benefit are so severe that considering your age, education, work experience, and transferable skills, you cannot engage in any other kind of substantial gainful activity in the labor market; and

    (b) Your disability or disabilities have lasted or are expected to last at least 12 months, or are expected to result in your death.

    (2) A person with multiple injuries/conditions, some duty-related and some not, could qualify for a catastrophic duty disability but only if the duty injury or injuries, standing on their own, are catastrophically disabling.

WAC 415-104-480.

D.    PROCEDURAL HISTORY

In March 2018, the Deputies filed a complaint in superior court against Pierce County. The Deputies alleged that the PCSD wrongfully discharged them in violation of public policy.[3] In support of their wrongful discharge in violation of public policy claim, the Deputies alleged that they were constructively discharged from the PCSD when they were medically separated from employment.

The County moved for partial summary judgment on the wrongful discharge in violation of public policy claim, arguing that the Deputies failed to identify a clear mandate of public policy. The superior court denied the County's motion.

The County sought discretionary review in this court. We granted discretionary review on "'whether a clear mandate of public policy exists under these circumstances is a controlling question of law on which there is [a] substantial ground for a difference of opinion.'" *Bray*, slip op. at 1-2 (alteration in original) (quoting Ruling Granting Review, *Bray v. Pierce County*, No. 53080-5-II, at 9 (Wash. Ct. App. Apr. 8, 2019)). We affirmed, holding that "under these circumstances, Bray and Tracy have identified a clear public policy to protect victims of domestic violence and to not affirmatively arm a restrained party when serving a domestic violence protection order." *Id*. at 2.

On remand, the County again moved for summary judgment on the wrongful discharge in violation of public policy claim. This time, the County argued that the Deputies could not show

---

[3] The Deputies also brought claims for negligence, outrage, negligent infliction of emotion distress, abuse of process and malicious prosecution, defamation, false light, false arrest, and invasion of privacy.

they were constructively discharged, as their medical discharge was not solely because of intolerable working conditions. The County also argued that even if the Deputies were wrongfully discharged, the discharge was not connected to the public policy they advance (prevention of domestic violence). The County argued in its briefing that the Deputies were estopped from arguing that the PCSD's retaliation was the reason for their discharge.

At the hearing on the County's summary judgment motion, both parties addressed the County's estoppel arguments. The Deputies addressed the estoppel arguments on the merits and argued that the estoppel arguments were unsuccessful. The superior court granted the County's motion for partial summary judgment.

The Deputies sought discretionary review with our Supreme Court. The Supreme Court transferred the motion for discretionary review to this court.

The Deputies subsequently moved for voluntary dismissal of their remaining claims at the superior court. The superior court granted the motion, dismissing the remaining claims without prejudice, and later amended its order to dismiss the claims with prejudice. We converted the Deputies' petition for discretionary review to a notice of appeal.

## ANALYSIS

A.    STANDARD OF REVIEW

We review summary judgment decisions de novo and perform the same inquiry as the trial court. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 722, 425 P.3d 837 (2018). We view all facts and reasonable inferences in the light most favorable to the nonmoving party (here, the Deputies). *Id*. Summary judgment should be granted only when the evidence presents no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. CR 56(c);

*Martin*, 191 Wn.2d at 722. A genuine issue of material fact exists if reasonable minds could disagree on facts that control the outcome of the matter. *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 569, 459 P.3d 371, *review denied*, 195 Wn.2d 1031 (2020).

B.  LEGAL PRINCIPLES: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

The tort of wrongful discharge in violation of public policy is a narrow exception to the at-will employment doctrine. *Martin*, 191 Wn.2d at 722-23. A wrongful discharge in violation of public policy claim may be based on actual or constructive discharge. *Peiffer v. Pro-Cut Concrete Cutting & Breaking Inc.*, 6 Wn. App. 2d 803, 829, 431 P.3d 1018 (2018), *review denied*, 193 Wn.2d 1006 (2019). To succeed, the "'plaintiff must plead and prove that his or her termination was motivated by reasons that contravene an important mandate of public policy.'" *Id.* at 828 (quoting *Becker v. Cmty. Health Sys., Inc.*, 184 Wn.2d 252, 258, 359 P.3d 746 (2015)).

When there has been an actual discharge, the elements for a wrongful discharge in violation of public policy claim are "(1) the employee's discharge may have been motivated by reasons that contravene a clear mandate of public policy, and (2) the public-policy-linked conduct was a significant factor in the decision to discharge the worker." *Id.* at 829.

The first element differs depending on whether the claim is based on actual or constructive discharge. *Id.* at 830. In actual discharge cases, the plaintiff carries the burden of first showing that their discharge may have been motivated by reasons that contravene a clear mandate of public policy. *Id.* at 829. When the wrongful discharge in violation of public policy claim arises from constructive discharge, the first element "is modified to address whether the intolerable condition that led the employee to resign contravened a clear mandate of public policy." *Id.* at 830.

The second element also differs depending on whether the claim is based on actual or constructive discharge. *Id*. In actual discharge cases, the plaintiff must show that "the public-policy-linked conduct was a significant factor in the decision to discharge the worker." *Id.* at 829. In constructive discharge cases, the elements of a constructive discharge claim replace this second element. *Id.* at 830. The elements of a constructive discharge claim are that

> (1) the employer deliberately made working conditions intolerable, (2) a reasonable person in the employee's position would be forced to resign, (3) the employee resigned because of the intolerable condition and not for any other reason, and (4) the employee suffered damages as a result of being forced to resign.

*Id.* at 829. A plaintiff must satisfy all four constructive discharge elements to satisfy the second element of a wrongful discharge in violation of public policy claim based on constructive discharge.[4] *Id.* at 830.

C.      JUDICIAL ESTOPPEL AND CONSTRUCTIVE DISCHARGE

The Deputies argue that the superior court erred by granting summary judgment because a genuine issue of material fact exists as to whether they were constructively discharged. The County makes several arguments that the Deputies are precluded from arguing that they were constructively discharged, including that, because the Deputies testified in their disability retirement proceedings that their separation was due to PTSD caused by the February 2015

---

[4] The Deputies appear to argue that the third element in *Peiffer* (that the employee resigned because of the intolerable condition and not for any other reason) is not an element of constructive discharge. To the extent the Deputies make this argument, they are incorrect. Resigning solely because of intolerable working conditions and not for some other reason is an element of constructive discharge. *Barnett v. Sequim Valley Ranch, LLC*, 174 Wn. App. 475, 489, 302 P.3d 500, *review denied*, 178 Wn.2d 1014 (2013); *Crownover v. Dep't of Transp.*, 165 Wn. App. 131, 149, 265 P.3d 971 (2011), *review denied*, 173 Wn.2d 1030 (2012).

murder-suicide, the Deputies are estopped from arguing that the intolerable employment conditions were the sole reason for their discharge. We agree with the County.

### 1. Procedural Issues with Estoppel Arguments

As a preliminary matter, the Deputies argue that we should not address the County's estoppel arguments because (1) estoppel is an affirmative defense, (2) the County only raised estoppel in a footnote below, (3) the collateral source rule bars the County from using the Deputies' statements in the disability retirement proceedings, and (4) the County failed to preserve its judicial estoppel argument by only raising it in a reply brief below. We hold that the Deputies' arguments fail and the County is permitted to make its estoppel arguments.

#### a. Affirmative defense

The Deputies argue that we should not address the County's estoppel arguments because estoppel is an affirmative defense that must be specifically pleaded and proven. Affirmative defenses, including estoppel, are deemed waived if they are not "affirmatively pleaded, asserted with a motion under CR 12(b), or tried by the express or implied consent of the parties." *Taliesen Corp. v. Razore Land Co.*, 135 Wn. App. 106, 134, 144 P.3d 1185 (2006).

Here, the Deputies addressed the merits of the County's estoppel arguments at the summary judgment hearing and argued that the estoppel arguments were unsuccessful. The Deputies did not argue that the estoppel arguments could not be raised. Therefore, the estoppel arguments were tried by the implied consent of the parties, and the County did not waive its estoppel argument.[5]

---

[5] We note that the County filed its answer and affirmative defenses to the complaint before the Deputies testified in the disability retirement proceedings. Because the County's estoppel arguments are based on the disability retirement proceedings, it is unclear how the County could have raised estoppel as an affirmative defense in its answer.

b.       Estoppel raised in a footnote

Curiously, in a footnote, the Deputies argue that we need not address the County's estoppel arguments because the County only raised estoppel in a footnote in its summary judgment motion. We disagree.

A court may decline to address an issue raised solely in a footnote where it is ambiguous or equivocal as to whether the party intended to raise the issue. *See State v. Johnson*, 69 Wn. App. 189, 194 n.4, 847 P.2d 960 (1993). But here, it is clear that the County intended to raise estoppel because it continued to argue estoppel throughout the summary judgment proceedings below. Moreover, the Deputies failed to raise any argument below challenging the estoppel argument's placement in a footnote. *See* RAP 9.12 ("On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court."). Therefore, we reject the Deputies' argument raised for the first time in a footnote in their appellate brief complaining about the County's estoppel arguments that were initially raised in a footnote in the superior court but were fully litigated below.

c.       Collateral source rule

The Deputies argue that the collateral source rule bars the County from using the Deputies' statements in the disability retirement proceedings to make its estoppel arguments. Although the County raised the estoppel arguments below, the Deputies did not mention the collateral source rule. In reviewing a summary judgment decision, we will only consider issues called to the attention of the trial court. RAP 9.12. Therefore, we do not address the Deputies' argument raised for the first time on appeal regarding the collateral source rule.

Even if we exercise our discretion and address the Deputies' collateral source rule argument on the merits, the argument fails. The collateral source rule excludes evidence of third-party payments when a tortfeasor attempts to use that evidence to reduce a damage award. *See Cox v. Spangler*, 141 Wn.2d 431, 439, 5 P.3d 1265 (2000). The collateral source rule excludes this evidence because it is unfairly prejudicial: "the jury could use it for improper purposes." *Id.* at 440. Here, the issue on summary judgment was liability, not damages, and there was no jury that could have used the evidence for improper purposes. Therefore, even if the argument is addressed on the merits, the collateral source rule does not apply.

        d.      Judicial estoppel argument raised in reply brief below

The Deputies argue that we should not address the County's argument regarding judicial estoppel because it was raised for the first time in a reply brief below. Below, both parties addressed the County's judicial estoppel argument at the summary judgment hearing, and the Deputies argued that judicial estoppel did not apply. At no point did the Deputies discuss the placement of the judicial estoppel argument in a reply brief. Because the Deputies had the opportunity to argue the judicial estoppel issue below and failed to raise the argument they now assert, we decline to consider the Deputies' contention that the County raised the judicial estoppel argument for the first time in its reply brief. *See* RAP 9.12.

    2.     Judicial Estoppel

The County argues that judicial estoppel precludes the Deputies from creating a genuine issue of material fact as to whether the Deputies were constructively discharged. We agree.

Judicial estoppel precludes a party from taking incompatible positions to its advantage in successive judicial proceedings. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851,

861, 281 P.3d 289 (2012). The three core factors in determining whether judicial estoppel should

be applied are

> (1) whether the party's later position is "clearly inconsistent with its earlier position," (2) whether acceptance of the later inconsistent position "would create the perception that either the first or the second court was misled," and (3) whether the assertion of the inconsistent position would create an unfair advantage for the asserting party or an unfair detriment to the opposing party.

*Id.* (internal quotation marks omitted) (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538-

39, 160 P.3d 13 (2007)).

In catastrophic disability proceedings under the Deputies' retirement plan, the applicant

must show that they were injured "in the line of duty." WAC 415-104-480(1). "A person with

multiple injuries/conditions, some duty-related and some not, could qualify for a catastrophic duty

disability but only if the duty injury or injuries, standing on their own, are catastrophically

disabling." WAC 415-104-480(2). "Catastrophically disabled" means the person "is unable to

perform any substantial gainful activity due to a physical or mental condition that may be expected

to result in death or that has lasted or is expected to last at least twelve months." RCW

41.26.470(9); WAC 415-104-480(5)(a). For a mental disability to be sustained "in the line of

duty," the mental disability must arise from the performance of the duties of police work, not from

demotion or workplace discipline. *See Woldrich v. Vancouver Police Pension Bd.*, 84 Wn. App.

387, 392-93, 928 P.2d 423 (1996).

Thus, by seeking catastrophic disability benefits, the Deputies were required to prove that

the PTSD resulting from the February 2015 murder-suicide was, "standing on [its] own, . . .

catastrophically disabling." WAC 415-104-480(2). This means that the PTSD resulting from the

13

February 2015 murder-suicide, standing on its own, must have rendered the Deputies unable to perform any substantial gainful activity. RCW 41.26.470(9); WAC 415-104-480(5)(a).

Now, on their wrongful discharge in violation of public policy claim, the Deputies must show that their discharge occurred because of the PCSD's retaliation "and not for any other reason." *Peiffer*, 6 Wn. App. 2d at 829. To meet this burden, the Deputies must now take the position that the PCSD's retaliation was the sole reason why their PTSD became severe enough to prevent them from performing essential job functions, eventually resulting in their discharge.

The positions above are incompatible and clearly inconsistent with each other. And acceptance of the Deputies' current position would create the perception that either the ALJ or the court was misled as to the cause of the Deputies' inability to perform the duties of police work. Also, allowing the Deputies to assert these inconsistent positions would create an unfair advantage by allowing the Deputies to pursue different claims for their injuries by simply declaring different reasons for their inability to perform their duties of police work. Thus, the three core principles of judicial estoppel apply here and preclude the Deputies from previously asserting that the PTSD resulting from the February 2015 murder-suicide was catastrophically disabling standing on its own and rendered the Deputies unable to perform any substantial gainful activity, but now asserting that the retaliation was the sole cause for the severity of their PTSD, which prevented them from performing their essential job functions. *See Anfinson*, 174 Wn.2d at 861.

Without the assertion that their discharge occurred solely because of the PCSD's retaliation, the Deputies cannot prove the third element of constructive discharge—that the discharge occurred "because of the intolerable condition and not for any other reason." *Peiffer*, 6 Wn. App. 2d at 829. Because the Deputies' wrongful discharge in violation of public policy claim

is based solely on constructive discharge arising from the PCSD's retaliation, their wrongful discharge in violation of public policy claim fails as a matter of law. *See id.* at 830. Accordingly, we affirm the superior court's order granting summary judgment dismissal of the Deputies' wrongful discharge in violation of public policy claim.

D.      SANCTIONS

In their reply brief, the Deputies ask this court to sanction the County under RAP 18.9(a) and RPC 3.1. The Deputies argue that sanctions are warranted because the County made an alternative argument regarding causation that is frivolous. We disagree.

RAP 18.9(a) provides that this court may order a party that files a frivolous appeal to pay sanctions. Because the County is not the appellant and did not file a frivolous appeal, RAP 18.9(a) cannot justify an order for sanctions against the County.

RPC 3.1 provides that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." However, "'breach of an ethics rule provides only a public, *e.g.*, disciplinary, remedy and not a private remedy.'" *Just Dirt, Inc. v. Knight Excavating, Inc.*, 138 Wn. App. 409, 417, 157 P.3d 431 (2007) (quoting *Hizey v. Carpenter*, 119 Wn.2d 251, 259, 830 P.2d 646 (1992)). Thus, we decline to issue sanctions against the County based on RPC 3.1.[6]

---

[6] The County's alternative argument regarding causation relied wholly on an unpublished case. To the extent the Deputies are arguing that reliance on the unpublished case is sanctionable, we note that the unpublished opinion was filed by this court after March 1, 2013, and the County properly identified the case as unpublished and cited to GR 14.1(a).

E.     ATTORNEY FEES AND COSTS ON APPEAL

In the conclusion of their opening brief, the Deputies state that "[c]osts on appeal should be awarded to them." Br. of Appellant at 50. To the extent the Deputies request attorney fees and costs on appeal, we deny their request.

RAP 18.1(a) provides that "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses . . . the party must request the fees or expenses as provided in this rule." RAP 18.1(b) provides that "[t]he party must devote a section of its opening brief to the request for the fees or expenses." RAP 18.1(b) "requires more than a bald request for attorney fees on appeal." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9, *review denied*, 175 Wn.2d 1016 (2012).

Here, the Deputies did not provide any argument or citation to law granting them the right to attorney fees or costs, nor did they devote a section of their opening brief to their request for attorney fees or costs. Therefore, we deny the Deputies' request for attorney fees and costs on appeal.

## CONCLUSION

We affirm the superior court's order granting summary judgment dismissal of the wrongful discharge in violation of public policy claim.

No. 57026-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Glasgow, C.J.

_____
Price, J.

17